CLUETT, PEABODY & Co., INC., Appellant-Respondent, v. J. W. MAYS, INC., Respondent-Appellant.

Second Department, January 6, 1958.

*James A. Thomas, Jr.*, and *Stephen Rackow Kaye* for appellant-respondent.

*Milton Kunen, Sidney A. Diamond* and *Donald H. Balleisen* for respondent-appellant.

NOLAN, P. J. We are required on this appeal to determine whether or not the provisions of article XXIV-A of the General Business Law (Fair Trade Law) were properly invoked against respondent-appellant (hereinafter referred to as defendant) under the circumstances disclosed by the record before us and, if so, whether it was proper to grant a conditional injunction against defendant, restraining it from selling articles of merchandise at less than their fair-trade prices.

Cluett, Peabody & Co., Inc. (hereinafter referred to as plaintiff), sued defendant to enjoin discount sales and advertising in violation of a fair-trade contract covering men's shirts manufactured by plaintiff, and bearing its registered trade-mark. After trial, an injunction was granted enjoining defendant from selling such merchandise below the prices fixed therefor in plaintiff's fair-trade contract " except that as to the said shirts * * * defendant may offer to sell to plaintiff the balance of the stock now on hand at the cost to it * * * and in the event of the failure of plaintiff, within ten days from date hereof, to purchase said balance on hand, then defendant may dispose thereof at any price obtainable, without reference to the fair trade agreement." Plaintiff appeals from the quoted portion of the judgment; defendant appeals from the entire judgment. Defendant has also moved to dismiss plaintiff's appeal on the ground that it is academic.

There is little dispute as to the facts, with one exception, and they are succinctly stated in the Referee's decision. On January 28, 1955 plaintiff entered into a fair-trade agreement with a New York City department store retailer (other than defendant) providing for minimum prices for the sale in New York State at retail of some but not all of its varieties of men's shirts. Notice of the establishment of a fair-trade price-maintenance agreement was given by plaintiff to its many New York State customers and a general press release dated July 27, 1956 seems to have resulted in three short news items published about August 1, 1956 to the effect that plaintiff, starting August 1, would fair trade certain of its varieties of shirts.

Defendant owns and operates three large cash-and-carry department stores. On March 13, 1957 it purchased from an exporter, Colamerica Company, approximately 200 dozen men's shirts manufactured by plaintiff of which approximately 147

dozen were of the varieties covered by plaintiff's fair-trade agreement. The shirts were delivered to defendant on March 15. They were put on sale and prominently featured in defendant's advertisements on April 5 and 12, at prices considerably less than the minimum prices stipulated in plaintiff's agreement. When the matter was brought to plaintiff's attention, it promptly notified defendant by registered mail that certain of its shirts were subject to a fair-trade contract with minimum resale prices specified. Defendant continued to advertise and sell the shirts, including those price-fixed, at prices below the specified minimums, and this action followed.

The disputed issue of fact, above referred to, was whether or not, at the *time of its purchase* of the shirts, defendant knew that they were subject to a fair-trade agreement. Defendant asserted that it had no such knowledge, its president, Shulman, and its men's wear buyer, Baruchin, who negotiated the purchase, testifying to that effect. Plaintiff offered no proof of direct knowledge on the part of defendant, but claims that defendant must have known of the fair-trade agreement. That contention may be disposed of summarily. The trial court found to the contrary and that finding is supported by the evidence. For the purposes of this appeal, it must be held that defendant had no knowledge, actual or constructive, of the fair-trade agreement at the time it purchased the shirts in question in March, 1957. Concededly, it had such knowledge when it sold them.

It is plaintiff's contention that it met every requirement of the statute for full and effective injunctive relief, and that the conditions and limitations imposed by the Referee, respecting the return of the merchandise or its sale below the fair-trade price, were erroneous and effected a complete frustration of the statutory purpose. Defendant contends that no injunctive relief whatever was warranted, and that in any event plaintiff's appeal should be dismissed as academic since the goods which are the subject of plaintiff's appeal have been disposed of.

Defendant states without contradiction that the shirts were tendered to plaintiff as required by the judgment, that the tender was refused, and that the shirts were then sold at reduced prices to expedite their removal from stock. At present, defendant has none of such shirts in stock and sells none.

It is of course the general rule that the court will not decide questions which have become abstract because of a change in circumstances affecting the case after the decision below. (*Matter of Adirondack League Club* v. *Black Riv. Regulating Dist.*, 301 N. Y. 219, 222.) However, an exception is made where

questions of importance are presented, which are likely to arise with frequency. (*Matter of Lyon Co.* v. *Morris,* 261 N. Y. 497, 499; *Matter of Glenram Wine & Liquor Corp.* v. *O'Connell,* 295 N. Y. 336, 340; *Matter of Rosenbluth* v. *Finkelstein,* 300 N. Y. 402, 404.) In our opinion, this is such a case. The primary question presented is whether or not the Fair Trade Law may be successfully invoked against one who has established that he purchased merchandise in ignorance of the fact that it was subject to resale price restrictions under a fair-trade agreement to which he was not a party. Plaintiff urges that lack of knowledge at the time of purchase is immaterial if there was such knowledge at the time of offering for sale, while defendant contends that lack of knowledge at the time of purchase is a complete defense. There is also presented, if the Fair Trade Law may be enforced against such a purchaser, the question whether the goods may be sold at any price if the manufacturer who seeks to enforce his statutory rights refuses to buy them back. Neither question appears to have been decided by any appellate court in this State, although the former was presented in *Oneida* v. *Macher Watch Co.* (254 App. Div. 859). Under the circumstances, we believe that we should deny defendant's motion to dismiss the appeal (see *Cluett, Peabody & Co.* v. *J. W. Mays, Inc.,* 5 A D 2d 770, decided herewith) and should pass upon the merits.

The determination of the appeals by both parties depends upon whether plaintiff established a cause of action under section 369-b of the General Business Law, which provides: " Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provision of section three hundred sixty-nine-a, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby." If such a right of action was established there is no authority for the learned Referee's ruling that defendant could sell the shirts in question at any price, if plaintiff refused their return. As plaintiff argues, and defendant apparently concedes, the " closing-out " exception contained in the statute (General Business Law, § 369-a, subd. 2, par. [a]), is inapplicable (cf. *Remington Arms* v. *Harris Berger, Inc.,* 208 Misc. 561), although defendant asserts that the determination was proper, to achieve substantial justice between the parties. We do not agree that justice requires such a result. If in fact the law is violated by the sale of fair-traded merchandise, with knowledge at the time of sale that it is so price-fixed, regardless

of whether there was such knowledge at the time of acquisition, the decision under review frustrates the statutory purpose. It would permit any retailer, under similar circumstances, to sell below the minimum fair-trade price, if the manufacturer refused to repurchase the goods at the retailer's cost. In effect, the manufacturer could only maintain its prices by repurchasing from a retailer the goods which were to be sold in violation of the fair-trade contract. The statute contemplates no such obligation on the part of the manufacturer, and in our opinion there is no warrant for imposing such a duty upon it. (Cf. *Bridgeport Brass Co.* v. *Modell's Sporting Goods Co.,* 8 Misc 2d 714.)

If knowledge at the time of sale, as distinguished from knowledge at the time of acquisition, is sufficient to show that there was a knowing and willful violation of the statute, plaintiff should be entitled to full and unconditional relief. We are therefore of the opinion that the determinative question in the case is whether a violation of the statute is shown where the defendant acquired merchandise without knowledge that it was subject to a fair-trade agreement, although such knowledge was present at the time the goods were offered for sale. In our opinion that question should be answered in the negative.

It has been stated that "Plaintiff's cause of action depends upon defendant's knowledge of the existence of the resale price maintenance system and of the price stipulated by the trademark owner. By the almost unanimous interpretation of the Fair Trade Acts in state and federal courts, the defendant must have had this knowledge *at the time he acquired the goods*" (1 Callmann on Unfair Competition and Trade-Marks [2d ed.], p. 489). (Emphasis supplied.) And it has been held, with respect to identical provisions of our original Fair Trade Law (L. 1935, ch. 976), that "The entire theory of the statute is that it applies only to merchandise acquired after knowledge. Were it otherwise, the statute would permit price fixing by fiat, and it is due to the fact that this is not the tenor of the statute that it is constitutional." (*Seagram-Distillers Corp.* v. *Seyopp Corp.,* 8 Misc 2d 778.) Similar views have been expressed by our own courts, and those of other jurisdictions. (See *Oneida* v. *Macher Watch Co.,* N. Y. L. J., April 8, 1938, p. 1706, col. 3, affd. 254 App. Div. 859, *supra; Frankfort Distilleries* v. *Stockman,* N. Y. L. J., March 29, 1941, p. 1411, col. 5; *Shryock* v. *Association of United Fraternal Buyers,* 135 Pa. Superior Ct. 428; *Lionel Corp.* v. *Grayson-Robinson Stores,* 15 N. J. 191; *James Heddon's Sons* v. *Callender,* 29 F. Supp. 579.) A contrary view has been expressed in Wisconsin (see *Calvert's Dis-*

*tillers Corp.* v. *Goldman*, 255 Wis. 69). We are in accord with the views expressed in our own State in the cases heretofore cited.

Section 369-a of the General Business Law declares that a contract shall be legal, which provides that a buyer of a commodity bearing the label, trade-mark, brand or name of the owner or producer, may not resell it except at the price stipulated by the vendor. To this extent section 369-a has made no change in the common law, as declared in this State in respect of commodities in intrastate commerce. No statute was required to effect that result. (*Port Chester Wine & Liq. Shop* v. *Miller Bros.,* 253 App. Div. 188; *Marsich* v. *Eastman Kodak Co.,* 244 App. Div. 295, affd. 269 N. Y. 621; *Bourjois Sales Corp.* v. *Dorfman,* 273 N. Y. 167, 170–171.) Section 369-b, however, goes much further. It creates a new cause of action by which the restrictive provisions of such contracts may be enforced against those who are not parties to the fair-trade agreements. We believe that the provisions of this section should be strictly construed, but, of course, they must receive a construction consistent with their purpose to protect the good will of the owner or producer from injury when his trade-mark or name is employed in the sale of goods. There are, however, limits beyond which the Legislature may not go to effect that purpose. However important the object of the statute may appear to be, it is subject nevertheless to constitutional requirements.

Section 369-b does not prohibit the mere advertising, offering for sale or selling of a commodity at less than the price stipulated in a fair-trade agreement. It is the doing of these things knowingly and willfully which is declared to be unfair competition. We do not believe that this language is so clear that it allows no room for construction, or that it may receive the liberal interpretation contended for by plaintiff. It is not necessary for the purposes of this appeal to discuss the standard which has often been employed in testing the constitutional validity of price-fixing legislation, i.e., that in the absence of an emergency such validity is dependent on whether or not the particular business involved is " affected with a public interest " (cf. *Olsen* v. *Nebraska,* 313 U. S. 236; *Darweger* v. *Staats,* 267 N. Y. 290, 308; *Doubleday, Doran & Co.* v. *Macy & Co.,* 269 N. Y. 272, 281). We accept, for our purposes, the rule stated in *Nebbia* v. *New York* (291 U. S. 502, 537) that, so far as due process is concerned and in the absence of other constitutional restriction, the Legislature is free to adopt whatever economic policy may reasonably be deemed to promote public welfare, and to enforce that policy by legislation adapted

to its purpose. It may be conceded also that the protection of the good will of the producer of identified goods, created or enlarged by trade-marks, labels or brands, from injury through unfair competition is a legitimate legislative purpose and that price restriction, adopted as an appropriate means to that end and not as an end in itself, is constitutionally permissible. (Cf. *Old Dearborn Distr. Co.* v. *Seagram-Distillers Corp.*, 299 U. S. 183.) We are not concerned with the wisdom of the policy, or the adequacy or appropriateness of the law enacted to forward it (*Nebbia* v. *New York, supra*; *Olsen* v. *Nebraska, supra*). The legislative power is, nevertheless, not unlimited. Due process is satisfied only if the law passed has a reasonable relation to a proper legislative purpose and is neither arbitrary nor discriminatory (*Nebbia* v. *New York, supra*; *Defiance Milk Prods. Co.* v. *Du Mond,* 309 N. Y. 537, 541). Although legislative price-fixing powers are constitutionally limited, there is in this State no such limitation upon the fixing of resale prices, under legislative leave, by contract between the parties. It does not follow, however, that price restrictions contained in such a contract may be enforced by legislative fiat against one who not only never gave his assent thereto, but who purchased identified goods in complete ignorance of such restrictions. The question presented here is quite different from that which was decided by the United States Supreme Court in *Old Dearborn Distr. Co.* v. *Seagram-Distillers Corp.* (*supra*), in which the constitutionality of an Illinois Fair Trade Act similar to our own statute was sustained, and in which it was said (pp. 193-194):

" It is first to be observed that § 2 reaches not the *mere* advertising, offering for sale or selling at less than the stipulated price, but the doing of any of these things *wilfully* and *knowingly*. We are not called upon to determine the case of one who has made his purchase in ignorance of the contractual restriction upon the selling price, but of a purchaser who has had definite information respecting such contractual restriction and who, with such knowledge, nevertheless proceeds wilfully to resell in disregard of it.

" * * *

" Appellants here acquired the commodity in question with full knowledge of the then-existing restriction in respect of price which the producer and wholesale dealer had imposed, and, of course, with presumptive if not actual knowledge of the law which authorized the restriction. Appellants were not obliged to buy; and their voluntary acquisition of the property with such knowledge carried with it, upon every principle of fair dealing, assent to the protective restriction, with conse-

quent liability under § 2 of the law by which such acquisition was conditioned.

" * * *

" Here, the restriction, already imposed with the knowledge of appellants, ran with the acquisition and conditioned it." (Emphasis in original.)

No principle of fair dealing requires a similar determination in the instant case. As against a retailer who has accepted goods with a notice of minimum resale prices and with actual or presumptive knowledge of the law which authorized the restriction, it may well be argued that he has entered into at least an implied contract to maintain the prices stipulated, or in any event, that he is in no position to complain that a price-fixing statute is unreasonable or arbitrary insofar as it enforces against him only those restrictions on resales to which he has voluntarily subjected himself. When it is sought however to enforce such contractual restrictions against those who are not parties to the contract and who have not assented to the scheme or subjected themselves thereto by acquisition of commodities with notice of restriction on their resale, the situation is entirely different, and the reasons which justify legislative compulsion against those who acquire identified commodities with notice have no application. The latter case does not involve the enforcement against a purchaser of property of a definite obligation assumed as a condition of his purchase. Moreover, the restrictions sought to be enforced without his assent would be formulated, not by the Legislature, but by private persons, not bound by any official duty and uncontrolled by any standard or rule prescribed by legislative action. The constitutional validity of a law is to be tested, not by what has been done under it, but by what may, by its authority, be done (*Stuart* v. *Palmer*, 74 N. Y. 183, 188; *People ex rel. Beck* v. *Graves*, 280 N. Y. 405, 410). It seems obvious that price restrictions imposed under authority so delegated may be so arbitrary as to have no reasonable relation to the legislative purpose, and that their enforcement by law would be repugnant to the due process clauses of the Federal Constitution (U. S. Const., 14th Amdt., § 1) and those of our own Constitution (N. Y. Const., art. I, § 6) which guarantee due process and which vest the legislative power of the State in the Senate and the Assembly (N. Y. Const., art. III, § 1; *Darweger* v. *Staats*, 267 N. Y. 290, *supra*; cf. *Matter of Concordia Collegiate Inst.* v. *Miller*, 301 N. Y. 189; *Eubank* v. *City of Richmond*, 226 U. S. 137; *Carter* v. *Carter Coal Co.*, 298 U. S. 238, 311).

We do not read this statute as attempting to go that far. We do not ascribe to the Legislature an intention to delegate its functions, to deny due process, or to impose an unreasonable or unjust burden on those who purchase identified commodities in good faith, without notice of resale restrictions, and who might have exercised a choice not to buy, if placed on notice thereof.

It is always presumed in regard to a statute that no unjust or unreasonable result was intended by the Legislature and, if a particular application of a statute in accordance with its literal sense will produce or occasion injustice, another and more reasonable interpretation should be sought (*Matter of Meyer*, 209 N. Y. 386; *Matter of United Parcel Service* v. *Joseph*, 272 App. Div. 194). Consequences cannot alter statutes, but may help to fix their meaning (*Matter of Rouss*, 221 N. Y. 81, 91). Moreover, it is our duty to construe the statute, if possible, not only so as to avoid the conclusion that it is unconstitutional, but also so as to avoid grave doubts on that score (*People* v. *Barber*, 289 N. Y. 378, 385; *Tauza* v. *Susquehanna Coal Co.*, 220 N. Y. 259, 267).

We conclude, under the circumstances here disclosed, that the advertising and sale of the shirts in question, without knowledge of the resale restrictions contained in plaintiff's fair-trade agreement, did not amount to unfair competition within the meaning of the statute, and that defendant established a complete defense to the cause of action asserted in the complaint.

We do not consider *Bourjois Sales Corp.* v. *Dorfman* (273 N. Y. 167, *supra*) authority to the contrary. The appeal in that case involved the sufficiency of a complaint, which was stated to be ''in no way different'' from that before the Supreme Court in *Old Dearborn Distr. Co.* v. *Seagram-Distillers Corp.* (299 U. S. 183, *supra*). A similar question was presented in *National Distillers Prods. Corp.* v. *Seyopp Corp.* (253 App. Div. 793) and on reargument in *Seagram-Distillers Corp.* v. *Seyopp Corp.* (8 Misc 2d 778, *supra*). We find no conflict between the holding in the latter cases that complaints were sufficient, although they did not allege knowledge of fair-trade restrictions at the time of purchase of identified commodities, and our determination that lack of such knowledge may be established as a defense. Neither have we overlooked the conclusion reached in *Old Dearborn Distr. Co.* v. *Seagram-Distillers Corp.* (*supra*) that a provision of the Illinois Fair Trade Act similar to section 369-b of our own statute did not involve, as against the appellants in that case, an unlawful delegation of legislative power. That conclusion was based on the premise heretofore stated that the

150

appellants had acquired identified commodities with knowledge of the restrictions imposed by fair-trade agreements, and that such restrictions already imposed with their knowledge ran with the acquisition and conditioned it. Moreover, it did not purport to decide any question of statutory validity under a State Constitution.

The judgment should be reversed on the law, with costs, and the complaint should be dismissed, with costs. The findings of fact should be affirmed.

MURPHY, J. (dissenting). All that is required under section 369-b of the General Business Law to justify an injunction is that defendant did willfully and knowingly (1) advertise, (2) offer for sale, or (3) sell, any commodity at less than the price stipulated in any contract entered into pursuant to section 369-a. It is undisputed that defendant knew that the commodity was price-fixed at the time that defendant sold it. Defendant is, therefore, subject to restraint under the second and third clauses of the statute. There is nothing in the statute which justifies withholding the remedy because the defendant did not know that the commodity had been fair-traded as of the time the defendant acquired it.

In *Seagram-Distillers Corp.* v. *Seyopp Corp.* (8 Misc 2d 778) Mr. Justice STEUER in 1938 at the New York County Special Term cited *Old Dearborn Distr. Co.* v. *Seagram-Distillers Corp.* (299 U. S. 183) as authority that a "Plaintiff acquires rights only where merchandise is sold which has been acquired after notice." That question was expressly left open in the *Old Dearborn* case (*supra,* p. 193). Subsequently, Mr. Justice STEUER granted reargument and on reargument *granted* a temporary injunction. On the basis of the dubious authority of the *Seagram-Distillers* case (*supra*) it has been held that an injunction was warranted only where the purchaser had knowledge at the time of acquisition (*James Heddon's Sons* v. *Callender,* 29 F. Supp. 579; *Frankfort Distilleries* v. *Stockman,* N. Y. L. J., March 29, 1941, p. 1411, col. 5, HOOLEY, J., at the Kings County Special Term). It was also invoked in *Oneida* v. *Macher Watch Co.* (N. Y. L. J., April 8, 1938, p. 1706, col. 3, affd. 254 App. Div. 859), but that affirmance may have been predicated on the ground that denial of a temporary injunction was discretionary. The same result was approved in a casual dictum in *Lionel Corp.* v. *Grayson-Robinson Stores* (15 N. J. 191).

The foregoing is all of the authority in support of the theory that an injunction will not lie where the merchandise was acquired without knowledge. *Shryock* v. *Association of United*

*Fraternal Buyers* (135 Pa. Superior Ct. 428), cited by the majority, is inapplicable because there an injunction was denied where the defendant had no knowledge of the contract as of the time it sold the commodity.

To the contrary, it was pointed out in *Calvert Distillers Corp.* v. *Goldman* (255 Wis. 69) and in *Barron Motor* v. *May's Drug Stores* (227 Iowa 1344, 1346) that there was no provision in the pertinent fair trade act which rendered it inapplicable because the purchase had been made prior to receiving notice.

The soundness of the legislative omission to make knowledge at the time of acquisition a prerequisite for issuance of an injunction is illustrated by the facts under consideration. Plaintiff had entered into the fair-trade contract on January 28, 1955, had sent notices to each of its 400 customers in the metropolitan area and a press release to 17 newspapers and magazines in that area, as well as a notice to the trade generally. If, despite such notice, a defendant, as here, can successfully claim lack of knowledge that the commodity was price-fixed, then the efficacy of the statute is seriously curtailed.

The courts cannot read into a plainly worded statute a provision which would be helpful in establishing constitutionality. That would be judicial legislation (*Meltzer* v. *Koenigsberg,* 302 N. Y. 523; *People ex rel. Doctors Hosp.* v. *Sexton,* 267 App. Div. 736, 740, affd. 295 N. Y. 553).

The judgment should be modified by striking from the decretal paragraph thereof everything beginning with the word " except " and ending with the word " agreement ", and as so modified the judgment should be affirmed.

Wenzel and Beldock, JJ., concur with Nolan, P. J.; Murphy, J., dissents and votes to modify the judgment by striking from the decretal paragraph thereof everything beginning with the word " except " and ending with the word " agreement ", and to affirm the judgment as so modified, in opinion. Kleinfeld, J., not voting.

Judgment reversed on the law, with costs, and complaint dismissed, with costs. The findings of fact are affirmed.