Michael Potter, M.
Tbe defendant is charged with loitering on the morning of September 30, 1958, for about one-half hour starting at approximately seven o’clock, within 150 feet of pier 2, at Furman Street, Kings County, in that portion of the Port of New York district located within the State of New York; and at the said time and place, with having engaged other persons in conversation; and upon being questioned as to his presence thereat, with having offered no satisfactory explanation therefor. The charge is based upon section 7 of the Waterfront Commission Act (L. 1953, chs. 882, 883, as amd. by L. 1957, ch. 188).
The act is divided into three parts. Part I is comprised of the 16 articles constituting the original Interstate Compact between New York and New Jersey, to which the Congress of the United States gave its consent as required by article I (§ 10, third par.) of the Federal Constitution (67 U. S. Stat. 541). Part II implements the provisions of the compact; and Part III, which includes section 7 now in question, represents additional policing legislation enacted by New York. Manifestly, then, section 7 is part of an enactment designed to tighten law enforcement along the New York State portion of the waterfront.
The evil conditions there, holding both employer and employee in a reign of terror, were notorious; and they arc summarized *385 in Part I (§ 1, art. I) of the compact. (See, also, the Joint Memorandum of the State Crime Commissions of New York and New Jersey, the Port of New York Authority, and the Governors’ offices of New York and New Jersey, Public Papers of Governor Dewey, 1953, Appendix, p. 931.)
In fine, the object of the act was to eliminate criminal and corrupt practices in the handling of waterborne freight within the Port of New York district and to regularize the employment of waterfront labor which, in essence, had sunk to a form of peonage through the dominance of pseudo-union leaders. Hence, the conditions being special and urgent, so were the remedial steps, namely, to break the grip of the criminal elements ruling the area. Perforce, only strong measures could halt the evil and mischief, and prevent their recurrence. With these malign conditions in mind, the Legislature passed the corrective laws of which section 7 is a part. It provides as follows: “§ 7 Prohibition against loitering. No person shall, without a satisfactory explanation, loiter upon any vessel, dock, wharf, pier, bulkhead, terminal, warehouse, or other waterfront facility or within five hundred feet thereof in that portion of the port of New York district within the state of New York.”
The defendant’s position in the instant case is that a violation of section 7 constitutes a mere offense and should be tried in the New York City Magistrates’ Courts.
The People and the Waterfront Commission of New York Harbor, appearing herein amicus curias, contend that a breach of the said section must be treated as a misdemeanor, and that hence, the proper forum is the Court of Special Sessions of the City of New York.
The inherent question of legislative intent before us is one of first impression.
The defendant rests his major argument upon the legislative proposal found in the Joint Memorandum, mentioned supra, which states as follows: “The statute [Waterfront Commission Act] also prohibits loitering on the waterfront without satisfactory explanation. The language for this section is taken from comparable provisions of law which presently apply to subways, railroads, air and bus terminals (Penal Law of New York, section 1990-a).” (Public Papers of Governor Dewey, 1953, Appendix, pp. 931, 937.)
The pertinent provisions of section 1990-a of the Penal Law are these:
“ 2. Any person who loiters about any toilet, station or station platform of a subway or elevated railway or of a railroad, or *386 who is found sleeping therein or thereon and who is unable to give satisfactory explanation of his presence is guilty of an offense.
“ 3. Any person who is guilty of an offense under this section shall be punishable by a fine not exceeding ten dollars or by imprisonment not exceeding thirty days, or by both such fine and imprisonment.”
For like provisions relating to air and bus terminals, see subdivisions 2 and 3 of section 150 of the Penal Law.
As to the meaning of the word “loitering”, see People v. Bell (306 N. Y. 110).
The Joint Memorandum (supra) was before the Legislature at the time of the enactment of section 7 as part of the Waterfront Commission Act. Eeports and recommendations of public bodies submitted to the Legislature for its remedial action help to shed light on its legislative intent. (People v. Charles Schweinler Press, 214 N. Y. 395, 404; Matter of Greenberg, 141 Misc. 874, 882, affd. 236 App. Div. 733, affd. 261 N. Y. 474.)
Since the provisions of section 7 have their legislative root in section 1990-a of the Penal Law, was it the intent of the Legislature to classify section 7 as a mere offense? The Waterfront Commission Act denominates various violations of its provisions as misdemeanors (Part I, § 1, art. XIV, subd. 2; Part II, § 2, subd. 9; §§ 4, 5-d). However, a breach of section 7 has neither been expressly named a misdemeanor nor an offense. The statute is wholly silent as to classification.
The defendant lays great stress upon the fact that New Jersey, the other party to the Interstate Compact, has enacted an identical prohibition against loitering, to be operative within that portion of the Port of New York district falling within the borders of New Jersey (New Jersey Waterfront Commission Act, New Jersey Stat. Ann., tit. 32, ch. 23, § 32:23-79). There, the statute calls the unlawful loiterer a disorderly person. As such, he is guilty of an offense (New Jersey Stat. Ann., tit. 2A, subtit. 12, ch. 169, § 2A:169-4; Sawran v. Lennon, 19 N. J. 606, 612, 613).
The People’s countervailing contention is that the New Jersey statute pertaining to disorderly persons embraces offenders whose acts, in many instances, would be specified as misdemeanors in New York, and accounted more serious in import than, for example, a simple assault and battery (State v. Maier, 13 N. J. 235, 251).
Moreover, a comparison of penalties discloses that the punishment upon a breach of the provisions of section 1990-a of the *387 New York Penál Law, which the defendant herein uses as a yardstick, and the sanctions found in the New Jersey law are not equal in dimension. On the contrary, the difference is marked. Whereas punishment under section 1990-a is minor {supra), an infraction of the New Jersey law could result in a fine up to $1,000 and imprisonment for a term not exceeding one year, or both (New Jersey Stat. Ann., tit. 2A, subtit. 12, ch. 169, § 2A:169-4). Since both States, as shown by the compact, were equally alarmed by waterfront conditions, it is untenable to suppose that they saw eye to eye as to the size and stress of the evils, and that to help redress them, each State enacted the prohibition against loitering, and yet differed widely as to the punishment for a breach thereof.
Although a statute in pari materia such as section 1990-a, may aid in ascertaining the sense of a hindered law (Sutherland, Statutory Construction [3d ed.], § 5608; Slate v. Brown, 22 N. J. 405, 415; People v. Clark, 242 N. Y. 313), yet such an assisting statute must yield to the basic rule of construction that all parts of an act must be read together to collect the legislative intent. {People v. Ryan, 274 N. Y. 149; People v. Dethloff, 283 N. Y. 309, 315; People v. Ahearn, 131 App. Div. 30, affd. 196 N. Y. 221.) Accordingly, the object, purpose and intent of the whole Waterfront Commission Act must be construed as a unit. Consequently, we are less concerned with maintaining harmony and symmetry between section 1990-a of the Penal Law and section 7 of the Waterfront Commission Act, than with placing the latter section in its proper niche as part of the corrective laws designed to overcome the dire conditions along the waterfront.
However, even though the legislative purpose in enacting section 7 be clear, yet the circumstance remains that the section gives the prohibited act neither classification nor terms of punishment. Such absence is the center of the entire issue. Unless some other provisions of law fill the void, the prosection must fail. And that is so, despite the fact that New York and New Jersey are pledged to an equality of effort to extirpate the maleficent conditions. For unless the deficiency be supplied by some other law, the omissions could only be provided by judicial legislation. That, self-evidently, is beyond the court’s function and power (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 73).
Had the Legislature intended section . 7 to be nothing more than the legislative equivalent of section 1990-a, then it would appear that the Legislature would have completed section 7 *388 by classifying its breach as an offense and by fixing a penalty comparable to that found in section 1990-a. Section 7 was enacted in 1953 (L. 1953, ch. 882, .§ 7) and amended in 1957 (L. 1957, ch. 188). Neither time had the Legislature seen fit to provide classification and penalty.
On the other hand, to accept the defendant’s thesis and proceed to denominate a breach of section 7 to be an offense is, in effect, to hold such breach to be no offense at all; for as suggested above, a statute defining a prohibited act without a covering penalty must fall as inchoate and abortive. (Penal Law, § 2; People v. Freres, 5 A D 2d 868.) However, it would be absurd to assume that twice, the Legislature performed a vain and empty act, namely, first, in passing and then, in amending section 7 with the intent to make it self-defeating by omitting classification of and terms of punishment for a breach thereof, or that the law-making body sought to meet positive conditions at the waterfront with an act of negation, i.e., to warn against loitering and in the same breath to cancel the warning by leaving it unenforcible. Accordingly, were section 7 open to two constructions, one sustaining it and the other destroying it, then the life-preserving sense should obtain (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 144; Matthews v. Matthews, 240 N. Y. 28, 34-35).
At the time of the passage of section 7, two general statutory provisions were in force that appear to lend life to that section, by supplying it with the missing elements of classification and penalty, namely, sections 29 and 1937 of the Penal Law.
The first section reads as follows: “ § 29. Violation of statute which imposes no penalty is a misdemeanor. Where the performance of any act is prohibited by a statute, and no penalty for the violation of such statute is imposed in any statute, the doing such act is a misdemeanor.”
The second section states: ‘ ‘ § 1937. Punishment of misdemeanors when not fixed by statute. A person convicted of a crime declared to be a misdemeanor, for which no other punishment is specially prescribed by this chapter, or by any other statutory provision in force at the time of the conviction and sentence, is punishable by imprisonment in a penitentiary, or county jail, for not more than one year, or by a fine of not more than five hundred dollars, or by both.”
It is noteworthy that were the punishment fixed in section 1937 to govern, then the New York and New Jersey penalties that might respectively be imposed would be on a parity as far as the maximum term of imprisonment was concerned, but *389 would only vary as to the limit of the fine, namely, $500 in New York and $1,000 in New Jersey.
A cursory reading of the cases might lead one to believe that they were so sharply divided as to defy reconciliation: One group enunciating the rule that section 29 readily supplies classification when a prohibiting statute fails to ordain it (Gardner v. People, 62 N. Y. 299; Marra v. New York Central & H. R. R. R. Co., 139 App. Div. 707; People v. Bogart, 3 Abb. Prac. 193); and the second group declaring that where the two elements of grade and penalty are missing in the proscribing law itself, or where the act is defined as criminal therein but no penalty is provided, then the law is nugatory through incompleteness (Penal Law, §§ 2, 22; People v. Freres, 5 A D 2d 868, supra; De Veau v. Braisted, 5 A D 2d 603, 609-4310; People v. Conti, 127 Misc. 244, 249-250).
The view expressed by the second group may be traced to the fact that common-law crimes have been abolished in New York (Penal Law, § 22; People v. Fein, 292 N. Y. 10, 14; People v. Freres, supra, p. 868); and also to the canon of construction that doubtful criminal statutes should be read most strictly in the defendant’s favor (People v. Farone, 308 N. Y. 305, 312; People v. Shakun, 251 N. Y. 107, 113-114).
Statutes upon cognate subjects may be considered in determining legislative intent, although they may not be strictly in pari materia {Modern Ind. Bank v. Taub, 134 N. J. L. 260, 263; State v. Brown, 22 N. J. 405, 415, supra). Accordingly, it may be of profit to examine the two cases of Linehan v. Waterfront Comm. of N. Y. Harbor (116 F. Supp. 401 [U. S. D. C., S. D. N. Y.]) and De Veau v. Braisted {supra). Both were civil cases involving a construction of section 8 of the Waterfront Commission Act of New York State. The section prohibits the solicitation, collection or receipt of dues or other funds on behalf of waterfront unions where any of its officers or agents had been convicted of a felony. Section 8 also omits classification and penalty for a violation of its provisions. Hence, in this regard, sections 7 and 8 are on equal footing. The question raised in each case was whether section 8 was a proper and reasonable, and, hence, constitutional exercise of .the police power.
In the Linehan case {supra) the court in weighing the criminal aspects of the section, concluded that though the statutory provision itself had not classified the proscribed act as a crime, yet section 29 of the Penal Law had done so.
*390 However, in De Veau v. Braisted (siipra) the court limited its decision to the civil facets of the case and left open, for future consideration, the applicability of section 29 of the Penal Law to section 8 of the Waterfront Commission Act. The court cited authorities pro and con on that question (5 A D 2d 610).
The cases cited in support of section 29 are: Gardner v. People (62 N. Y. 299, supra); Marra v. New York Cent. & H. R. R. R. Co. (139 App. Div. 707, supra); People v. Bogart (3 Abb. Prac. 193, supra).
The case cited as possibly but not definitively indicating a different view is: People v. Freres (5 A D 2d 868, supra).
The statute construed in the Gardner case (supra) forbade the removal of an election inspector without first giving a prescribed notice of the impending removal. An inspector was removed without the prerequisite notice. The statute failed to classify the prohibited act. Nor did it prescribe punishment. Nevertheless, the court held the act to be a misdemeanor under the then existing statute (2 R. S. 719 [Edm. ed.], § 39) identical in its import to section 29 of the Penal Law.
In the Marra case (supra) the court had before it for construction section 53 of the former Railroad Law (General Laws, ch. 39 [L. 1890, ch. 565, as amd. by L. 1892, ch. 676]; see Penal Law, § 1990, subd. 4). The statute provided that “no person other than those connected with or employed upon the railroad shall walk upon or along its tract or tracks, except where the same shall be laid across or along streets or highways, in which case he shall not walk upon the tracks unless necessary to cross the same.” Here, also, the statute was silent as to classification and penalty. Notwithstanding that fact, the court held that the plaintiff in traversing the tracks committed a misdemeanor as provided by section 155 of the old Penal Code, parallel in its provisions to those found in section 29 of the Penal Law. In view of such commission of a crime, plaintiff seeking damages for injuries sustained while crossing the defendant’s tracks, was held not to be entitled to affirmative care. The sole duty incumbent upon the said defendant was to refrain from willfully, wantonly and recklessly injuring him.
In People v. Bogart (supra) the statutory construction involved a law, then in force, which forbade any officer other than the committing magistrate to let to bail any person charged with a crime, unless notice of the application to bail such person were given to the District Attorney of the City and County of New York at least two days before such application, thereby *391 specifying the name of the officer, the time and place when and where such application would be made, and the names and residence of the proposed bail. In addition, the law required the original commitment and the proofs upon which it was founded to be before the officer hearing the application.
The defendant, as a Police Justice other than the committing Magistrate, let a person to bail without such notice having been given. The surety proved to be “ straw bail ”. Such prohibited act was held to be a misdemeanor under statutory provisions tantamount in effect to those set forth in section 29 of the Penal Law.
In People v. Freres (supra, cited by the court in De Veau v. Braisted, supra, p. 610, as suggesting a possible view contrary to the foregoing three cases), an indictment charged the defendant with having purchased, while Deputy County Clerk of Suffolk County, certain interests in real property from it, thereby purportedly committing a misdemeanor. The pertinent statutes were subdivisions 1 and 2 of section 412 of the County Law and section 6 of chapter 107 of the Laws of 1916, as amended. The statutory provisions forbade the defendant, as a county officer, to be interested, directly or indirectly, in any claim, account or demand against or contract with the county, except for compensation and necessary expenses incurred in the performance of his duties.
The County Law also provided (§ 412, subd. 2): “ Any such claim, account or demand against or contract with the county shall be null, void and unenforceable.”
Since these legislative prohibitions failed to classify a violation thereof, the prosecution relied on section 29 of the Penal Law to supply the deficiency. Nevertheless, the court found no crime defined by the two principal statutes involved.
That the language of these enactments was not intended to declare a crime might well be gathered from the above quotation from the County Law. The penalty, civil in nature, was patently directed at the proscribed interest itself and not at the holder thereof. The interest was thereby rendered worthless. The interdiction, then, related to the administrative or business practices in the public office mentioned. There it stopped.
However, in the case at bar, no doubt pervades the nature of the prohibited act. It is not novel to the books. The statute, kindred to it, namely, section 1990-a of the Penal Law, has been in effect since 1939 (L. 1939, ch. 391, as amd. by L. 1941, ch. 835; L. 1951, ch. 269); but the locus in quo envisioned by the ‘Waterfront Commission Act is a far more violent one than any of the *392 scenes of transgression specified by section 1990-a. Nor are the potential violators, under both laws, of equal stature. The menace being far greater along the waterfront, the Legislature, it would reasonably appear, intended punishment more commensurate with the evils there to be met, and so, more in keeping with the letter and spirit of the waterfront legislation as a whole.
In this regard the apposite canon of construction may best be stated by paraphrasing the words of Chancellor KeNt, namely, that the intent with which statutes are enacted “is to be collected from the context, from the occasion and necessity of the law, from the mischief felt, and the objects and remedy in view ” (1 Kent’s Comm., p. 462).
Accordingly, I am persuaded that a violation of the provisions of section 7 of the Waterfront Commission Act constitutes a misdemeanor, the classification of the crime and the punishment therefor being respectively provided by sections 29 and 1937 of the Penal Law.
In view of the foregoing, defendant’s motion for a trial of the charge against him, in this court, is denied; and it is ordered that the case herein be added to the complaint calendar of this court for the 5th day of January, 1959, at 10:00 a.m., for such further disposition by this court as the circumstances herein warrant.