Dominic S. Rinaldi, J.
The defendants are 10 individuals, the International Longshoremen’s Association and two locals of said union and 34 corporations which employ members of the union. The defendant Balsamo is alleged in the indictment to have been, prior to March 15, 1965, convicted of felonies in Michigan and New Jersey for which he has not been pardoned or received a certificate of good conduct from the Board of Parole. The indictment charges a violation of section 8 of *688 chapter 882 of the Laws of 1953, as amended (Waterfront Coin-mission Act, § 8) in that between March 15, 1965 and January 15, 1967, when Local 1277 of the union, a labor organization as defined in the statute, had as an agent or employee, the said Balsamo, all of the defendants, acting in concert, solicited, collected and received in Kings County dues for and on behalf of said Local and pursuant to agreement delivered said dues to the Local.
Section 8 (L. 1953, ch. 882, § 8, as amd. by L. 1961, ch. 211, § 3) provides: “ No person shall solicit, collect or receive any dues * * * within the state for or on behalf of any labor organization * * * if any officer, agent or employee of such labor organization * * * has been convicted by a court of the United States, or any state or territory thereof, of a felony * * # unless he has been subsequently pardoned therefor * * * or has received a certificate of good conduct from the board of parole * * * to remove the disability.” Neither section 8 nor any other provision of the act makes a violation of section 8 a crime. The People, however, attach criminality thereto by virtue of section 29 of the former Penal Law which states: ‘ ‘ Where the performance of any act is prohibited by a statute, and no penalty for the violation of such statute is imposed in any statute, the doing such act is a misdemeanor.” The new Penal Law, which became effective on September 1, 1967, omits therefrom, and thus repealed, section 29 of the former law. A violation of section 8 after September 1, 1967 would thus -concededly not be criminal, but the former law is applicable to this alleged offense committed prior thereto (new Penal Law, § 5:05).
The defendants have demurred to the indictment. It must therefore be determined whether the facts stated therein constitute a crime.
Section 29 of the former Penal Law has been applied in a number of cases. In none of these cases, however, has it been attacked as constitutionally vulnerable.
Generally, when the Legislature has made the violation of a statute criminal, it has said so in the statute itself, or in some other statute in the same article or chapter of the laws. This is required so that a person reading the statute shall be made aware of its criminal consequences. For, a penal statute must give fair warning as to its application and must not be so vague that persons of common intelligence must guess or differ as to its application (People v. Zanchelli, 8 Misc 2d 1069,1070; People v. Phyfe, 136 N. Y. 554; People v. Shakun, 251 N. Y. 107, 114 ; People v. Caswell-Massey Co., 6 N Y 2d 497, 501; People v. Vetri, *689 309 N. Y. 401, 405; People v. Adamkiewicz, 298 N. Y. 176; People v. Benc, 288 N. Y. 318; People v. Bloomenstiel, 48 Misc 2d 771, 774).
Section 29 on its face, and read literally, is broad and all-inclusive, and includes within its sweep, all acts prohibited by, and unpenalized in, a statute. If it were to be so universally applied, the question would arise whether its presence lurking in the Penal Law is a sufficient warning to one reading an unrelated statute that such hidden and unexpressed therein criminality is contained therein. Nevertheless, despite its broad language, section 29 has in fact not been applied by the courts to all such statutes, but has been applied to some (People v. Merolla, 18 Misc 2d 383, affd. 11 A D 2d 799, affd. 9 N Y 2d 62, cert. den. 365 U. S. 872; People v. Gardner, 62 N. Y. 299; People ex rel. Weatherwax v. Watt, 115 Misc. 120, 134; People v. Olcese, 41 Misc. 102; Matter of Vanderhoff, 15 Misc. 434) and held not to apply to others (People v. Freres, 5 A D 2d 868; People v. Luongo, 39 Misc 2d 905 ; People ex rel. Warren v. Beck, 144 N. Y. 225, 227; 1946 Atty. Gen. 149,155). In Be Vean v. Bmisted (5 A D 2d 603, 610, affd. 5 N Y 2d 236, affd. 363 U. S. 144), the Appellate Division of this Department specifically raised the question whether section 29 is applicable to a violation of section 8, the statute involved herein, but the court left the question open and undecided.
There is a profusion of prohibitory statutes scattered among the Consolidated and Unconsolidated Laws of New York in which no criminal penalty is provided. If section 29 is applicable to some and not to others without specifying which or specifying standards precise enough to determine to which it is to be applied, how can anyone know or determine at the time of committing an act proscribed by one of these statutes whether or not he is committing a crime 1 For example, section 14 of the Judiciary Law provides: “ A judge shall not sit as such in, or take part in the decision of, an action, claim, matter, motion or proceeding to which he is a party, or in which he has been attorney or counsel, or in which he is interested, or if he is related by consanguinity or affinity to any party to the controversy within the sixth degree ”. Any judgment or decision in such a case is void (Matter of Thoms, 24 A D 2d 536). Judges are presumed, in our society, to be most cognizant of the law, but scarcely one of them would not have been surprised or shocked to find that section 29 might be applicable to this statute so as to render the offending Judge a criminal. How do even Judges know at this time whether section 29 would, if such a Judge had been indicted, have been applied to section 14 *690 of the Judiciary Law or whether it would haye been held to be an excluded therefrom statute, since section 29 contains no standard by which such discrimination may be made? The answer would thus depend upon an ad hoc future determination in that case as was done in the previously reported cases involving various other statutes.
Section 29 thus left the public uncertain as to which statutes it was applicable. Section 29 is thus vague and devoid of standards and is violative of due process of law. “ A law fails to' meet the requirements of the Due Process Clause if it is so vagu.e and standardless that it leaves the public uncertain as to the conduct it prohibits or leaves judges or jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case” (Giaccio v. Pennsylvania, 382 U. S. 399, 402-403; United States v. Mersky, 361 U. S. 431, 440; United States v. Gambling Devices, 346 U. S. 441; Bouie v. City of Columbia, 378 U. S. 347, 350, 355). This, “ under these circumstances would be to send him to jail for a crime he could not with reasonable certainty know he was committing. This court has often held that fundamental fairness requires that such reasonable certainty exist ” (Scull v. Virginia, 359 U. S. 344, 353), “ The vice of vagueness in criminal statutes is the treachery they conceal either in determining what persons are included or what acts are prohibited” (United States v. Cardiff, 344 U. S. 174, 176). I hold, therefore, that section 29 is so infected with uncertainty as to which statutory prohibitions are included within its sweep as to render, it lacking in the requisite, due process of law to satisfy the Fourteenth Amendment to the Federal Constitution and section 6 of article I of the New York State Constitution.
Even assuming section 29 to be constitutional and applicable to section 8, the defendants assert that section 8 as applied to them is repugnant to the Due Process Clauses of the Federal and State Constitutions because of the lack in section 8 of any requirement of scienter, so that they might be convicted thereunder even if they had no knowledge of Balsamo’s prior convictions. Attacks on the constitutionality of section 8 have previously been rejected (De Veau v. Braisted,, 363 U. S. 144, supra; People v. Merolla, 9 N Y 2d 62, supra; Bradley v. Waterfront Comm, of N. Y. Harbor, 12 N Y 2d 276; International Longshoremen’s Assn. v. Hogan, 3 Misc 2d 893). But these rejected ■ attacks were, made on other grounds and contentions. None of them was based on the due process question of scienter raised here.
*691 Knowledge of the underlying fact which renders one’s act criminal is generally essential to conviction (Morissette v. United States, 342 U. S. 246; People v. Flack, 125 K Y. 324, 334). "While it is competent for a State to create strict criminal liabilities by defining criminal offenses without any element of scienter, there are due process limitations on that power (Smith v. California, 361 U. S. 147, 150). Due process of law is not a rigid or static expression. It is a concept of what is fundamentally just, fair and right, and the courts in determining whether the constitutional demands of due process have been met and satisfied in any particular case, must decide the question on the facts of that case (Wolf v. Colorado, 338 U. S. 25; Rochin v. California, 342 U. S. 165; United States v. Ragen, 86 F. Supp. 382, 388). ■“ Due process bars * * * enactments that shock the sense of fair play — which is the essence of due process ” (Galvan v. Press, 347 U. S. 522, 530). Thus, a criminal statute which omits the element of scienter may in its application to a particular defendant under the circumstances of a particular case violate due process (Lambert v. California, 355 U. S. 225; Martin v. Goldstein, 20 App. Div. 203). Even where the statute specifically made the employer criminally liable, without knowledge, for the act of his agent, the Court of Appeals, in an opinion by Judge Cardozo and a concurring opinion by Judge Crane, would not have applied the statute where imprisonment was the penalty (People ex rel. Price v. Sheffield Farms Co., 225 N. Y. 25, 32).
In this case, the corporate employer defendants, by their contracts with the defendant union, are required to check off and collect union dues and as the indictment alleges “ pursuant to agreement deliver said dues so collected to defendant Local 1277 ”. Unless and until such corporate employer is informed of the criminal record of a union agent or employee, it would have the impossible burden of day to day investigation, since employees may change from day to day or an employee without a criminal record today may have one tomorrow. If the convicted employee concealed his prior conviction from the union and the employer, how could the employer uncover it? It must check in Federal and 50 State jurisdictions. These criminal records are not public records open to the employer, but are accessible only to law enforcement agencies. Even if the employer made every inquiry possible under these circumstances and such inquiry failed to turn up the existing conviction, the employer would still be criminally liable under this statute. The Waterfront Commission, which has the duty and function of policing the act, did not find out about Balsamo’s convictions *692 until almost two years after his employment by the union commenced. Yet, these employers of longshoremen members of the union are sought to be held criminally liable. The application of this criminal statute, section 8, to these defendants, checking off dues because they are required to do so by their labor contracts, without knowledge of the union employee’s prior convictions, is thus repugnant to the Due Process Clauses of the Federal and State Constitutions.
Even assuming the constitutionality of both section 29 and section 8, the question arises whether section 8 is one of the statutes to which section 29 was intended to be applicable. This is the question left open in De Veau v. Braisted (5 A D 2d 603, 609-610, supra). If the question is now required to be answered, that answer must be in the negative. Section 8 was enacted by chapter 882 of the Laws of 1953 as part of the Waterfront Commission Compact (Part I) and Waterfront Commission Act (Part III). Section 8 is included in Part III thereof applicable to New York State. New Jersey enacted kindred statutes. By section 4 violations of the compact for which no other penalty is prescribed are misdemeanors. In article XIV penalties are provided for general violations, in which section 8 is not included. In section 5-0 (L. 1953, ch. 882, as amd. by L. 1961, ch. 211, § 2), the misdemeanor penalty of section 4 is applied to certain supplementary violations, Avhich do no include section 8. By section 5-d (L. 1953, ch. 882, as amd. by L. 1954, ch. 220, § 2), false swearing before the commission is made a misdemeanor. By chapter 220 of the Laws of 1954, sections 5-e and 5-f Avere added providing for civil penalties for certain violations of the compact. New Jersey, in enacting section 8 (N. J. Stat. Ann., § 32:23.80) added a proAdsion at the end thereof, not found in New York section 8, making a violation thereof a misdemeanor.
Thus, when the Legislature intended to make a violation of any section of the act a misdemeanor, it specifically said so. Where it intended to apply civil penalties, it specifically said so. The fact that it did not include the criminal penalty in section 8 when New Jersey did, or in all the ensuing years, further points to the fact that the omission to make a violation of section 8 criminal was intentional. The misdemeanor provision in the New Jersey statute cannot be assimilated with New York section 8 by implication. There can be no crime by implication (People v. Adamkiewicz, 298 N. Y. 176,179, supra).
It is no answer to say that the Legislature did not include a misdemeanor in section 8 because it was deemed unnecessary in view of section 29. In 1958, the Appellate Division raised a *693 doubt as to the applicability of section 29, stating: “ Whether section 29 has that effect deserves immediate and serious attention by all parties interested in activities in the Port of New York district and by all parties interested in law enforcement ” (De Veau v. Braisted, 5 A D 2d 603, 610, supra). It must be presumed that the Legislature was aware of the court’s view of the statute (Toolson v. New York Yankees, 346 U. S. 356, 357). Yet the Legislature, in all the ensuing years, made no manifestation of any attempt to remove such doubt by amending section 8 to specifically make it a misdemeanor, as it did in other sections of the act, thus indicating again that it did not intend section 29 to apply thereto. In 1965, when section 29 was repealed by the Legislature, and thus the doubt as to its application to section 8 was dissolved, the Legislature again omitted, concomitantly or in the ensuing two years, to amend section 8 to make a violation thereof a misdemeanor.
Section 29 can be construed as constitutional by ascribing to it a more limited application than has heretofore been given it, and this limited application was, I believe, always its intended application. Such limited application was never urged in prior cases which applied it generally, and which, it seems to me, thus lifted it out of its setting and context as part of the “ General Provisions ” of the former Penal Law. “It is the duty of the courts to assume the legislature did not intend to violate the Constitution, and to so construe this statute as to bring it within constitutional limitations, if possible ” .(Germania Sav. Bank v. Village of Suspension Bridge, 159 N. Y. 362, 369; Mater of Vanderbilt, 281 N. Y. 297, 313, affd. sub nom. Whitney v. Tax Comm. 309 U. S. 530; Matter of Roosevelt Raceway v. Monaghan, 9 N Y 2d 293, 303; Hotel Armstrong v. Temporary State Housing Rent Comm., 11 A D 2d 395, 401). “ It is always presumed in regard to a statute that no unjust or unreasonable result was intended by the Legislature and, if a particular application of a statute in accordance with its literal sense will produce or occasion injustice, another and more reasonable interpretation should be sought ” (Cluett, Peabody & Co. v. J. W. Mays, Inc., 5 AD 2d 140,149, affd. 6 N Y 2d 952).
Whenever the Legislature intended to make a violation of any of its statutes a misdemeanor, it said so in the statute itself or in an associated statute contained in the same article or chapter of the consolidated and unconsolidated laws. (For the many such statutes, see the enumeration in the Index to McKinney’s Cons. Laws of N. Y. under the heading of “ Misdemeanors ”.)
*694 Section 29 is part of article 2 of the former Penal Law entitled “ General Provisions ” and relates to the provisions of the Penal Law itself, to be read in connection with the later specific provisions of the Penal Law. Thus, section 20, the first section in article 2, is entitled “ Objects of penal law ” and states what the entire chapter is intended to do. Section 21 is headed ‘ ‘ General rules of construction of this chapter 5 ’. Section 22 is headed “ Effect of chapter The Penal Law in its ensuing articles then specified, in alphabetical arrangement, the many penal acts, dividing them into felonies and misdemeanors, in many cases doing so by specification of the length of the imprisonment imposed. Section 29 was plainly intended to cover those instances where the penalty may not have been designated, giving the defendant the benefit of the doubt, by making such a crime a misdemeanor rather than a felony. Thus, section 29 was intended to apply to the Penal Law only and not to any other statutes. It did not make every act prohibited by statute a crime, which the Legislature, enacting the statute, did not specifically desígnate as a crime and never intended to brand violations thereof criminal, and never had section 29 in mind when enacting it. That this is so, is evident from the Third Interim Report of the Temporary Commission on Revision of the Penal Law (Feb. 1, 1964, N. Y. Legis. Doc. No. 14) which recommended the elimination and repeal of the “ General Provisions ” of the old Penal Law. At pages 13 to 14 of the Report the commission stated as to sections 1-43 of the Penal Law including section 29: “ These [sections'] promise enunciation of term definitions, classifications of offenses, rules of statutory construction, doctrines of criminal liability theories of defense and other principles of general application designed to facilitate the interpretation and operation of the Penal Law as a whole. The ‘ General Provisions ’, however, offer little of assistance in these directions, containing few substantial guideposts relating to principles of culpability, liability, exemption from liability or defense. Examination reveals a series of unrelated sections, many of a seemingly inconsequential nature, strung together without pattern and without any endeavor to identify, much less formulate, vital theories and principles of criminal law” (Emphasis supplied).
By chapter 1031 of the Laws of 1965, effective September 1, 1967, the Legislature, on recommendation of the commission, transferred from the old Penal Law to the various appropriate chapters of the consolidated and unconsolidated laws, 373 sections of the old Penal Law, each of which contained a misdemeanor provision as to a violation thereof (conforming and *695 harmonizing certain provision^ thereof to provisions of the said revised Penal Law). In omitting and repealing section 29, the revising commission and the Legislature plainly were aware that they were eliminating a section which had previously applied only to the Penal Law itself. Otherwise, they would be repealing many criminal statutes in the consolidated and unconsolidated laws. If they deemed section 29 to have any application outside of the Penal Law, they would, in addition to transferring 373 sections to the consolidated laws, have added misdemeanor provisions to each of the statutes to which section 29 previously applied, so as to make no unintended change in such existing laws. They did not do so because those prohibitory statutes, outside the Penal Law, without criminal penalty, were never intended to be made criminal by section 29, and in repealing section 29, they made no change therein. To say otherwise, would be to attribute the grossest ineptness to the commission and the Legislature, which, of course, is not the case. Judgment is granted allowing the demurrers.