**LINEHAN** et al.

v.

**WATERFRONT COMMISSION OF NEW YORK HARBOR** et al.

United States District Court
S. D. New York.

Nov. 9, 1953.

Brenner, Hannan & Murphy, New York City, for plaintiffs.

Lawrence E. Walsh, General Counsel to Waterfront Commission of New York Harbor, Albany, Lawrence E. Walsh, Sol Neil Corbin, Albany, Arthur Brooks, New Rochelle, N. Y., Joanne MacFarlane, New York City, and James J. Ahearn, of counsel, for defendants Waterfront Commission of New York Harbor et al.

Nathaniel L. Goldstein, Atty. Gen. for New York, Samuel A. Hirshowitz, Asst. Atty. Gen., of counsel, for other defendants.

Before AUGUSTUS N. HAND, Circuit Judge, and McGOHEY and WEINFELD, District Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is a motion to enjoin the Waterfront Commission of New York Harbor from carrying out the provisions of the Waterfront Commission Compact. U.S. Code Congressional and Administrative News 1953, p. 605. This Act contains a comprehensive plan for the regulation of employment on the waterfront of New York. It has been enacted into law by New York, N.Y.Laws of 1953, cc. 882, 883, McK.Unconsol.Laws, § 6700–aa et seq., and New Jersey, N.J.Laws of 1953, cc. 202, 203, N.J.S.A. 32:23–1 et seq. Since it is a compact between states consent of Congress was required and this was received with little difficulty. Public Laws 252, c. 407, 83rd Cong., 1st Sess. The Act requires each longshoreman to register with the Commission, forbids employment as a longshoreman without such registration, and also forbids the taking of employment except through the employment information centers to be set up by the Commission. The adoption of the Act resulted from the abundant evidence uncovered of grave abuses in the existing system of hiring longshoremen known as the "shape-up", and of the character of some of the hiring bosses and the men hired. It is also shown by the evidence found by the New York State Crime Commission that longshoremen were obliged to bribe a hiring boss in order to obtain employment and that the employers were also obliged to bribe him in order to obtain longshoremen necessary to load and unload their ships. The Act provides a method for eliminating these abuses and for making employment on the waterfront an honest and efficient calling. It is to be noted that the Act does not go into effect until December 1, 1953.

The Act is attacked as unconstitutional upon numerous grounds, but we can find nothing in it that violates the Constitution and believe it to have been a reasonable exercise of the police power of the States of New York and New Jersey. It authorizes the Waterfront Commission in its discretion to deny registration to men who have been found guilty of specified crimes, advocate the overthrow of the government, or "whose presence at the piers or other waterfront terminals in the Port of New York district is found by the commission on the basis of the facts and evidence before it, to constitute a danger to the public peace or safety." This latter ground for refusal of registration has been the center of attack. In answer to the argument that it furnishes no standard of conduct for the Waterfront Commission to apply, it seems reasonable to hold, in view of the particularity with which the purposes of the Act are expressed, the context in which the clause appears, and the fact that this is a civil and not a criminal statute, that the standard is not too vague. Moreover, it is to be presumed that the Commission will not act arbitrarily, and if it does its action can be attacked directly in the hearing procedure provided and in the courts. People of State of New York ex rel. Lieberman v. Van De Carr, 199 U.S. 552, 562, 26 S.Ct. 144, 50 L.Ed. 305; Nebbia v. People of State of New York, 291 U.S. 502, 54 S.Ct. 505, 78 L. Ed. 940. As Chief Justice Hughes said in New York Central Security Corp. v. United States, 287 U.S. 12, 24, 53 S.Ct. 45, 48, 77 L.Ed. 138, where the definition of "public interest" was involved: "It is a mistaken assumption that this is a mere general reference to public welfare without any standard to guide determi-

nations. The purpose of the Act, the requirements it imposes, and the context of the provision in question show the contrary." See also National Broadcasting Co., Inc. v. United States, 319 U.S. 190, 225, 63 S.Ct. 997, 87 L.Ed. 1344. Moreover, the "public peace and safety" provision is no more unreasonable than a regulation cancelling a pharmacist's license for unfitness and incompetence such as the Court of Appeals of New York upheld in a unanimous decision in Mandel v. Board of Regents, 250 N.Y. 173, 164 N.E. 895.

It is further argued that some men are excluded by the Act who have neither committed any of the crimes denounced therein or shown to be in any way involved with the public safety. Art. IX accomplishes this by setting up requirements of regularity of employment or attempts to have regular employment. The present system seems merely to cumber the waterfront with persons who have no substantial relation to the business of stevedoring and they would seem to be properly eliminated where their relation is so tenuous as not to fulfill the extremely moderate requirements of the Act. The elimination of these fringe stevedores is immediately connected with the purpose of the Act since the crowding of the piers makes employment difficult and uncertain and is likely to lead to the abuses complained of. Moreover, a charge that the Act denies equal protection of the laws seems unfounded. Where the discrimination proposed has reasonable grounds for its existence and is directly related to the purposes of the legislation it will be upheld. Goesaert v. Cleary, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163; Keokee Consolidated Coke Co. v. Taylor, 234 U.S. 224, 34 S.Ct. 856, 58 L.Ed. 1288.

Since we hold the Act is within the police power of the State, the numerous objections to it generally based on violations of the Constitution would all seem to be without foundation. This is a new type of regulation, drawn to meet an emergency and reasonably related to the public interest. We should sustain it unless more specific proof of its abuse should be established.

As the case is presented to us, we deny the motion for interlocutory relief and dismiss the complaint.