**STATEN ISLAND LOADERS,**
Inc. et al.
v.
**WATERFRONT COMMISSION OF**
**NEW YORK HARBOR et al.**

United States District Court
S. D. New York.
Dec. 9, 1953.

Brenner, Hannan & Murphy, New York City, for plaintiffs; George A. Brenner, New York City, of counsel.

Lawrence E. Walsh, Albany, Gen. Counsel to the Waterfront Commission of New York Harbor, defendant; Whitman Knapp, New York City, Arthur Brooks, Neponsit, and Sol Neil Corbin, Albany, of counsel.

Nathaniel L. Goldstein, Atty. Gen., of New York, defendant, pro se; Samuel A. Hirshowitz, Asst. Atty. Gen., of counsel.

Before AUGUSTUS N. HAND, Circuit Judge, and GODDARD and McGOHEY, District Judges.

AUGUSTUS N. HAND, Circuit Judge.

The plaintiffs, Staten Island Loaders, for themselves and as the representatives of a group of "public loaders" in New York Harbor, are here attacking the constitutionality of the Waterfront Commission Compact. The Compact embraces a comprehensive plan to regulate the New York Waterfront, and was adopted by the Legislatures of New York, N.Y. Laws of 1953, cc. 882, 883, McK.Unconsol. Laws § 6700–aa et seq., and New Jersey, N.J. Laws 1953, cc. 202, 203, N.J.S.A. 32:23–1 et seq. Necessary congressional consent to the Compact between the two states was also procured, Public Laws 252, c. 407, 83rd Cong. 1st Sess., U.S. Code Congressional and Administrative News 1953, p. 605.

A three-judge district court was convened to pass on the plaintiffs' demand for an injunction against the Act, pursuant to 28 U.S.C. § 2281. Since Article VII of the Compact, prohibiting "public loaders" from operating on New York piers, was to go into effect December 1, 1953, a temporary restraining order was granted by Judge Goddard pending the disposition of the plaintiffs' claims before this court.

The "public loader" system is peculiar to New York Harbor, growing out of conditions resulting from World War I. Due to lack of labor during that period, truckmen got into the habit of hiring laborers available at the piers to load and unload their trucks. As time passed these laborers banded together and organized the "public loaders" system. As the system grew public loaders organized themselves into corporations and partnerships and gained control over an important step in harbor operations— that of transferring waterborne freight between the pier and shoreside vehicles. The New York State Crime Commission made a prolonged investigation of waterfront activities in New York Harbor and in a report to the Governor dated May 20, 1953, found that "public loading is a racket seriously threatening the Port of New York." Fourth Report of the New York State Crime Commission, Leg.Doc. No. 70, p. 56. Specifically the evils charged were: (1) "The pier operators have no control over loaders and are forced to supply services [to them] without charge on the threat of work stoppages." (2) The dual employer-union

status of the public loaders, i. e., being members of the I.L.A. and acting as employers for public loading operations, has led to many evils such as using "labor weapons of picketing and strikes to obtain loading concessions." (3) Public loaders have been guilty of serious overcharging and charging for services not rendered; this has been accomplished by coercion and extortion. (4) It was found that many public loaders had long criminal records and constituted an undesirable element on the waterfront. (5) "Although collecting millions of dollars annually, the public loaders keep practically no books and records." (6) "The proceeds from public loading are largely siphoned off by union leaders and known criminals." (7) "Public loading has resulted in serious loss to the port and shipping industry"; compulsory charges for loading and unloading have caused many exporters and importers to ship through other ports and "struggles for control of the public loading at a particular pier often result in costly work stoppages". These findings have been corroborated in testimony at public hearings before Governor Dewey on June 8 and 9, 1953, and before the House of Representatives Subcommittee No. 3 of the Committee on the Judiciary, Hearing on H.R. 6286, 6321, 6343 and S. 2383, July 22, 1953. See also Final Report of Board of Inquiry on Longshore Industry Work Stoppage October–November, 1951, Port of New York, p. 24 et seq., Jan. 22, 1952; H.R. Report No. 998, 83rd Cong. 1st Sess.; S.Rep. No. 653, Waterfront Investigation: N.Y.–N.J., 83rd Cong. 1st Sess. pp. 8–9.

Article VII of the Waterfront Compact makes it unlawful for independent contractors known as public loaders "to load or unload waterborne freight onto or from vehicles * * * at piers or at other waterfront terminals within the port of New York district * * *." In the future this function is permitted to be carried out only by persons and their employees who have some other related interest in the waterfront such as carriers, pier operators, shippers, consignees, and licensed stevedores.

■ The plaintiffs argue that the Act is unconstitutional because it forbids the exercise of a lawful calling, but the proof shows that the exercise of this calling by public loaders in New York Harbor has been accompanied by such flagrant abuses that it is against the public interest to allow them to continue. There is no proof that these abuses will not continue in the future and the legislature has found that they are inherent in the system itself. In our opinion these findings justify the legislation. As was found in Linehan v. Waterfront Commission of New York Harbor, D.C., 116 F.Supp. 683, where the longshoremen registration provisions of the Compact were under consideration, we hold that the prohibition of public loading is within the police power of the State and is not subject to attack as an unreasonable, arbitrary, or capricious exercise of legislative power.

■■ The plaintiffs argue that the prohibition of public loading is unreasonable because regulation of the industry would be less harsh and would also do away with the evil practices they concede to exist. To support their argument they rely on Weaver v. Palmer Bros. Co., 270 U.S. 402, 46 S.Ct. 320, 70 L.Ed. 654, where a Pennsylvania law prohibiting the use of shoddy material in comfortables, even when sterilized, was found to be arbitrary and unreasonable, seemingly on the ground that regulation would be sufficient to meet the evils sought to be corrected. But the Supreme Court has withdrawn from this extreme view of the Fourteenth Amendment, see Mr. Justice Holmes' dissenting opinion, 270 U.S. at page 416, 46 S.Ct. at page 323, and has made it increasingly clear that it is not for the judiciary to decide whether the legislature has chosen the best remedy to meet an evil. The court decides only whether the means chosen are constitutional and related to the evil sought to be abolished. See, e. g., Railway Express Agency, Inc., v. New York,

336 U.S. 106, 109, 69 S.Ct. 463, 93 L.Ed. 533; Daniel v. Family Security Life Ins. Co., 336 U.S. 220, 224–225, 69 S.Ct. 550, 93 L.Ed. 632; Olsen v. State of Nebraska ex rel. Western Reference & Bond Ass'n, 313 U.S. 236, 246–247, 61 S.Ct. 862, 85 L.Ed. 1305. Furthermore, there is no proof here that regulation would dispose of the evils of the public loading as they seem to be inherent in the system itself. There was presented to the legislature two alternative courses of action; (1) regulation of public loading, and (2) prohibition of the practice. However, the preponderance of opinion favored the latter. As early as 1928, a proposed report by an I.C.C. hearing examiner recommended elimination of public loading. The Hudson County Grand Jury, in a presentment on December 5, 1952, found that public loading should be abolished. District Attorney Hogan of New York urged it as the only effective course of action. The chairman of one of the subcommittees of the Commerce and Industry Association of New York testified at the hearings held by Governor Dewey that "licensing the loaders would tend to perpetuate their stranglehold on the waterfront." In making its decision to prohibit public loading it is to be presumed that the legislature made a conscious and careful choice, based on long study and consideration. We cannot say that the remedy chosen is unreasonable.

 It is clear that there is no absolute right to engage in a business which is in conflict with the public interest. "The Constitution does not guarantee the unrestricted privilege to engage in a business or to conduct it as one pleases. Certain kinds of business may be prohibited; and the right to conduct a business, or to pursue a calling, may be conditioned." Nebbia v. New York, 291 U.S. 502, 527–528, 54 S.Ct. 505, 512, 78 L.Ed. 940. See also Breard v. City of Alexandria, 341 U.S. 622, 632–633, 71 S. Ct. 920, 95 L.Ed. 1233. It should be noted that the plaintiffs do not say that they will be unable to qualify under one of the categories of people who may transfer waterborne freight between pier and shoreside vehicles in the future. They merely indicate that they do not wish to so qualify.

██ The plaintiffs charge that they have not been guilty of the abuses found by the Legislature and thus as applied to them the Compact is a denial of due process of law. There is little merit in this argument; " * * * a statute may be sustained though some of the objects affected by it may be wholly innocent." Queenside Hills Realty Co. v. Saxl, 328 U.S. 80, 83, 66 S.Ct. 850, 852, 90 L.Ed. 1096. See also Goesaert v. Cleary, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163. Moreover, here the State is legislating not only against the specific abuses perpetuated by the public loaders in the past but also against the system itself.

 It is argued finally that the State legislation before us encroaches on the exclusive jurisdiction of Congress over maritime matters. But whether or not public loading comes within the maritime jurisdiction, it has always been clear that a State may legislate on matters affecting interstate commerce and the maritime industry which are purely local in nature. Cooley v. Board of Wardens of Port of Philadelphia, 12 How. 299, 53 U.S. 299, 13 L.Ed. 996 (pilots); Parkersburg & Ohio River Transportation Co. v. City of Parkersburg, 107 U.S. 691, 2 S.Ct. 732, 27 L.Ed. 584 (wharfage fees). Moreover, as pointed out in Kelly v. State of Washington ex rel. Foss Co., 302 U.S. 1, 15, 58 S.Ct. 87, 82 L.Ed. 3, a State may exercise its police power in the maritime field to protect the public health and safety. It is clear that the control and regulation permitted by the Compact over the waterfront in New York Harbor clearly concerns such public interests. Moreover, the registration of longshoremen and stevedores and the prohibition of public loading are matters of local concern in which the need for uniformity throughout the United States does not exist.

The plaintiffs have made other charges of unconstitutionality but they

are so lacking in substance that we think they need not be discussed.

As there has been no showing of a justification for either a preliminary or permanent injunction, the restraining order is vacated and the complaint dismissed.