Jambs C. Oraste, J.
This is an article 78 (Civ. Prac. Act) proceeding which turns solely upon the question whether or not an officer of a waterfront union who pleaded guilty to a felony and received a suspended- sentence, is to be considered convicted within the meaning of the term as it is used in section 8 of the Waterfront Commission Act. (L. 1953, chs. 882, 883.) In substance, this section provides that a union representing waterfront employees cannot collect dues from its membership if an officer or agent of such labor organization has been convicted of a felony.
Petitioners seek relief by way of an injunction to restrain the District Attorney of the County of Richmond from enforcing section 8 of the above act. The respondent District Attorney, supported by the Waterfront Commission as amicus curice-, cross-moves to dismiss the complaint, or in the alternative, for judgment on the pleadings in that the complaint fails to state facts sufficient to constitute a cause of action.
The gravamen of the complaint is predicated upon the following undisputed facts. Petitioner, De Veau, an officer of petitioner, Local 1346 of the International Longshoremen’s Association, pleaded guilty to attempted grand larceny in the first degree in the Court of General Sessions, New York City, in 1922. The crime was then, and now is, a felony. Following his plea of guilty, the court suspended sentence. Acting upon the complaint of the Waterfront Commission of New York Harbor, the respondent District Attorney notified the petitioner union that *663 as long as De Veau remained in its employ as an agent, the union was forbidden by section 8 of the Waterfront Commission Act to collect dues. The union suspended De Veau. The petitioners contend that without De Veau as an officer, the ability of the union to act as a collective bargaining representative is impaired and that because of his removal, De Veau, himself, is damaged financially and otherwise.
Petitioners assert, first, that the provisions of section 8 of the Waterfront Commission Act are void because this section is in direct conflict with section 7 of the National Labor Relations Act (U. S. Code, tit. 29, § 157), as amended, and secondly, that a plea of guilty to a felony, followed by a suspension of sentence, does not constitute a conviction within the meaning of the term as it is used in section 8 of the act. This section reads as follows:
“ Collection of funds for unions having officers or agents who are felons. No person shall solicit, collect or receive any dues, assessments, levies, fines or contributions within the state from employees registered or licensed pursuant to the provisions of this act or on behalf of any labor organization representing any such employees, if any officer or agent of such organization has been convicted by a court of the United States, or any state or territory thereof, of a felony unless he has been subsequently pardoned therefor by the governor or other appropriate authority of the state or jurisdiction in which such conviction was had or has received a certificate of good conduct from the board of parole pursuant to the provisions of the executive law to remove the disability.
“ As used in this section, the term ‘ labor organization ’ shall mean and include any organization which exists and is constituted for the purpose in whole or in part of collective bargaining, or of dealing with employers, concerning grievances, terms and conditions of employment, or of other mutual aid or protection; but it shall not include a federation or congress of labor organizations organized on a national or international basis even though one of its constituent labor organizations may represent persons so registered or licensed.”
Section 7 of the National Labor Eelations Act, as amended, provides: ‘ ‘ Eight of employees as to organization, collective bargaining, etc. Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except *664 to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158 (a) (3) of this title.”
The petitioners’ contentions with respect to the constitutional aspects of this case are no longer novel. These arguments have been advanced by the petitioners on many occasions and in a variety of forums. As a result, a number of decisions hold, and uniformly so, that section 8 of the act is not in conflict with section 7 of the National Labor Relations Act. (International Longshoremen’s Assn. v. Hogan, 3 Misc 2d 893; Hazelton v. Murray, 21 N. J. 115; Staten Is. Loaders v. Waterfront Comm., 117 F. Supp. 308, affd. 347 U. S. 439; Bradley v. Waterfront Comm., 130 F. Supp. 303.)
In International Longshoremen’s Assn. v. Hogan (cited supra) upon almost identical facts and issues, and with only one change among the principals cast as parties, Mr. Justice Heoht held, and this court agrees, that the limitation imposed by section 8 of the Waterfront Commission Act on the right of the union to collect dues is not in conflict, constitutional or otherwise, with any of the rights granted to collective bargaining agents under section 7 of the National Labor Relations Act.
However, the petitioners argue that unlike the Hogan case, where the plaintiff Schultz was an appointed agent, plaintiff De Veau herein, was elected to union office. This distinction between the cases is insufficient to create a difference. Were this distinction accepted by this court, it would merely serve to defeat the statutory intent, not further it. Section 8 refers without qualification to “ any officer or agent ”. This statutory phrase is absolute in its sweep. To shear elected union officials from its operation would be to nullify in one stroke much of the effect of the section itself, as well as to be inconsistent with the broad nature of the plan established by the act to control crime and corruption on the waterfront.
The petitioners’ remaining contention that the use of the term “ conviction ” in section 8 of the act does not apply to De Veau is also without merit.
An examination of section 8, whether standing alone, or as part of the entire text of the act, makes the petitioners’ position untenable. The section is both explicit as to those whom it includes and comprehensive as to the manner of their treatment. The meaning of the term ‘ ‘ conviction ’ ’ in this section is consonant with its use as it is found elsewhere in the act.
Significantly, section 8, even when taken by itself, presents a well-ordered plan to curb corruption on the waterfront by the effective means of depriving a union of access to revenue where *665 its officers or agents have been convicted of crime, unless the person in question has received a governmental pardon or a certificate of good conduct from the Parole Board acting under the Executive Law. The imposition of a suspended sentence, following a plea of guilty to a felony, is not the equivalent of a governmental pardon or a certificate of good conduct, the available relief to a conviction so precisely enumerated in the statute.
The New York State Crime Commission in its Fourth Report (Legis. Doc. No. 70, 1953), was keenly aware of the realities of venality and hoodlumism in the waterfront when it exposed many union officials as often arrested but seldom convicted. Thus, in discussing the Harold Bowers case as one among many, the commission found: “(b) Harold Bowers was appointed by Ryan as an ILA organizer for the North River area in July, 1951. Bowers, alias Frank Donald, has been arrested on four occasions charged with such offenses as robbery, possession of a gun, grand larceny (twice) and congregating with known criminals (Ex. 45). Bowers still continues both as a paid organizer and as a financial secretary * * * (2230). Dominick Genova, a former member of Local 824, testified that Harold Bowers was a member of the gang in control of the upper North River piers headed by Harold’s cousin, Michael (Mickey) Bowers, a convicted bank robber (2153-2154).” (P.21.)
The Waterfront Commission Act, itself, reflects concern with the known waterfront racketeers who escaped conviction. To quote from the summary of the Waterfront Commission Act, prepared by the representatives of the State Crime Commission of New York and New Jersey; the Port of New York Authority, and the Governors’ offices of New York and New Jersey: “ In the light of the Crime Commission’s disclosures of the activities of known waterfront gangsters who have so far escaped being convicted of crime, provision has been inserted to permit the Commission to deny registration as a longshoreman to a person, whose presence on the piers or other waterfront terminals in the port of New York district is found by the Commission, on the basis of the facts and evidence before it, to constitute a danger to the public peace or safety.” (Public Papers of Gov. Thomas E. Dewey, 1953, pp. 931, 934.)
Thus, where the Legislature, by investigation and by statute, has expressed such rightful concern with known individuals who have escaped conviction so often despite their frequent skirmishes with the law, a plea of guilty followed by suspended sentence, rightfully must be considered a conviction. To hold otherwise would be to confer benefits where none was intended.
*666 Examining other sections of the act, it is clear that a conviction is not negated, or its effect nullified, because it is followed by a suspended sentence. On the contrary, whenever the Legislature used the term “ conviction ” in the act, and with it, the phrase, “ suspension of sentence ”, the terms, as so used, constitutes the equivalent of punishment, not its abrogation.
Thus, to be eligible to work, a pier superintendent, hiring agent and stevedore, who has been convicted of a particular crime, must prove his good behavior over a five-year period, measured either from the date of the actual termination of the sentence, or the payment of a fine, or the suspension of sentence. (L. 1953, ch. 882, § 1, arts. V, VI, as amd.)
As so used, the suspension of sentence is equated with punishment, whether it be the actual termination of sentence or the payment of a fine. It is fair to assume that the Legislature did not intend to impose one standard upon stevedores, hiring agents and pier superintendents, and another upon union officers and agents. If such were the case, it would be reasonable to suppose that the more stringent standards would fall upon the union officers and agents or those who, as the Crime Commission found, acted in a fiduciary relationship and held a position of trust and responsibility with unlimited access to the funds of the membership and no effective methods of accountability.
In further support of its position, the petitioners urged that in People v. Fabian (192 N. Y. 443) the Court of Appeals held that a plea of guilty to a felony, followed by a suspended sentence, did not constitute a judgment of conviction which would bar the right to vote. The petitioners also rely upon such cases as People ex rel. La Placa v. Murphy (277 N. Y. 581) where the court held in a memorandum opinion, that there was no conviction as a fourth felony offender within the meaning of the Baumes Law because a sentence previously imposed as a third felony offender was followed by the suspension of the execution thereof. To the same effect: People ex rel. Marcley v. Lawes (254 N. Y. 249).
These cases adhere to the general rule as stated in Matter of Richetti v. New York State Bd. of Parole (300 N. Y. 357, 360): “ We have had occasion to point out that the word ‘ conviction ’ is of equivocal meaning and that the use of the term may vary with the particular statute involved. It presents a question of legislative intent.”
These decisions, and other which follow them, are strong authority for the petitioners’ position. However, the Court of Appeals has taken an opposite course, holding elsewhere that *667 one who is guilty of a felony, and who receives a suspended sentence, nevertheless stands convicted.
Thus, in a leading case, Weinrib v. Beier (294 N. Y. 628, motion to reargue denied 295 N. Y. 657) the petitioner, a dentist, pleaded guilty to a felony and received a suspended sentence. Under the Education Law his license to practice dentistry was thereupon cancelled upon the ground that he had been convicted of a felony. The Court of Appeals held that although he had received a suspended sentence, he, in fact, had been convicted within the meaning of the statute, and hence, his license had been properly revoked.
The court stated (pp. 631-632) and it is instructive to quote at length:
“ We have presented to us the problem of deciding the meaning of the words 1 convicted of felony ’ in that particular section of the Education Law. It has been said 1 that the question whether the word “ conviction ” in any particular statute shall be taken to include a suspended sentence, is one of legislative intention ’. (People ex rel. Marcley v. Lawes, 254 N. Y. 249, 254.) Again, we have said in People v. Fabian (192 N. Y. 443, 449): 1 This use of the term [‘1 convicted ”], with varying meanings, even in the same statute, and extending right down to the immediate present, certainly demonstrates that there is no fixed signification which the courts are bound to adopt, and leaves us the utmost freedom of inquiry as to what was intended when the legislature was empowered to disfranchise convicted citizens. ’
“ We have, upon occasion, interpreted the word ‘ conviction ’ to mean a verdict or plea of guilt. Matter of Lewis v. Garter (220 N. Y. 8), where in construing Prison Law, section 211, we said (p. 16): ‘ The word “ convicted ” or “ conviction ” is of equivocal meaning. It may mean the adjudication of guilt whether by plea, finding or verdict. It may mean the adjudication and the judgment or sentence.’ See, also, People ex rel. Spurio v. Foster, 293 N. Y. 820, construing section 219 of the Correction Law. In a disciplinary proceeding against a member of a profession, where the latter confesses in open court by formal plea of guilt the commission of a felony, it seems to us that the Legislature clearly intended that such plea constituted conviction of a felony, even though probation followed rather than commitment to prison.”
Under the foregoing reasoning, the purpose of the statute does much to determine the meaning of its terms, and to resolve areas of ambiguity which may arise in their use. Thus, where *668 the Legislature has failed to specify that a suspended sentence following a plea or verdict of guilty, constitutes a conviction, and a defendant stands facing a long term of imprisonment, the defendant cannot rightfully be expected to suffer the loss of Ms liberty as a consequence of the Legislature’s silence. Appro-priately then, the Legislature, when it irrevocably deprives an individual of a basic right, such as his freedom, or denies him the equally fundamental right to vote, must do so by terms explicit. Omission is not enough.
In contrast, where a dentist, or one similarly situated, loses his license to practice, although obviously, this is a serious result, the privilege lost is no more than incidental. His license to function in this one particular field, a right given to him by the State, is now withdrawn because of his own misconduct. His ability to earn a living has been narrowed but not terminated. (See Matter of Barsky v. Board of Regents of Univ. of State of N. 7., 305 N. Y. 89, affd. 347 U. S. 442.)
In connection with the above distinction, the OpiMons of the Attorney-General for 1950, at pages 112 to 113 states: “ All of the other statutes mentioned in your inquiry fall in an area between the Fabian and Weinrib cases in which there has been no specific determination * * * The legislature has furnished no guide to its intention by using in all cases the same bare words ‘ convicted ’ or ‘ conviction ’, as were construed differently in the Fabian and Weinrib cases.
“ None of the statutes now under consideration involves a professional pursuit but each of them requires the affirmative grant of a license from the State as a condition of the privilege of engaging in regulated occupations or activities ranging from that of notary public to insurance adjuster. Disability upon felony conviction is a disqualifying or disciplinary factor in each. For these reasons I believe that the rule of the Weinrib case is applicable rather than the Fabian case which insisted upon a technical judgment of conviction before loss of one of the rights of citizenship would ensue.”
Upon a careful evaluation of the competing considerations, including particularly the nature and background of the Waterfront Commission Act itself, it is clear that the Weinrib decision, and not the Fabian case, applies here. The State is not required to obtain a technical judgment of conviction in order to deny individuals in professional fields or other occupations from continuing in their particular livelihood. (Medicine, Education Law, § 6502; Dentistry, Education Law, § 6613, subd. 12; Nursing, Education Law, § 6911, subd. 1, par. e; Podiatry, Education Law, § 7011, subd. 1, par. a; Optometry, Education Law, § 7108, *669 subd. 1; Engineering and Surveying, Education Law, § 7210, subd. 1, par. e; Architecture, Education Law, § 7308, subd. 1, par. e; Certified Public Accounting, Education Law, § 7406, subd. 1, par. [c].)
Such is the ease here, and petitioner De Veau, as one convicted within the meaning of section 8 of the act, loses his right to act as a union officer.
This decision, holding section 8 of the act constitutional, and De Yeau convicted within its meaning, does not leave him without recourse. The statute itself provides channels for relief, and the petitioner is free to pursue them before the proper authorities.
Accordingly, the petitioners’ application for an injunction pendente lite together with the petitioners’ cross motion for judgment on the pleadings, is denied. The respondent’s motion for judgment dismissing the complaint, and for judgment on the pleadings in his favor, is granted.
Settle order on notice.