ANTHONY CICCONE, Petitioner, v WATERFRONT COMMISSION OF NEW YORK HARBOR, Respondent.

JOSEPH A. BYRNE, Petitioner, v WATERFRONT COMMISSION OF NEW YORK HARBOR, Respondent.

RUSSELL W. NEITZ, Petitioner, v WATERFRONT COMMISSION OF NEW YORK HARBOR, Respondent.

NORTHEAST MARINE TERMINAL CO., INC., Petitioner, v WATERFRONT COMMISSION OF NEW YORK HARBOR, Respondent.

First Department, November 27, 1979

---

## APPEARANCES OF COUNSEL

*Howard Schulman* of counsel *(David Jaffe* with him on the briefs; *Schulman & Abarbanel* and *Robert H. Bogucki,* attorneys), for Anthony Ciccone, petitioner.

*Martin J. McHugh* of counsel *(Dennis C. McMahon* and *William M. Kimball* with him on the briefs; *McHugh, Heckman, Smith & Leonard* and *Burlingham Underwood & Lord,* attorneys), for Joseph A. Byrne and another, petitioners.

*Mark Abramowitz* of counsel *(Elliot Cohen* with him on the briefs; *Parker Chapin Flattau & Klimpl,* attorneys), for Northeast Marine Terminal Co., Inc., petitioner.

*Susan Lushing* for respondent.

## OPINION OF THE COURT

J. Robert Lynch, J.

The petitioner Ciccone is employed as an extra-labor foreman by the petitioner Northeast Marine Terminal, of which petitioners Byrne and Neitz were principal officers. Ciccone is also on the executive board of Local 1814, International Lonshoremen's Association. Since 1976 Northeast Marine Terminal has provided him the use of an automobile in addition to his monetary wages. In consequence, the respondent brought charges against the petitioners, all pivoting on the allegation that the use of the car was not reasonable compensation for services rendered and was thus a prohibited payment to a representative of a labor organization (Labor Law, § 723; US Code, tit 29, § 186). After a hearing and upon the report and recommendation of the hearing officer, the respondent held the charges sustained and imposed penalties.

In this article 78 proceeding seeking review of the respon-

dent's determination, we agree with the petitioners that it is not supported by substantial evidence (see *Matter of Pell v Board of Educ.,* 34 NY2d 222).

The respondent, pursuant to a stipulation that it would assume the burden of proving all the charges, provided as the only direct evidence on the pivotal compensation question the testimony of Byrne and Neitz. They testified that Ciccone is a "tough hardnose but fair man" in a job as extra-labor foreman that requires that type because "[h]e shoulders all the other foremen plus most of the other superintendents in terms of translating on behalf of Northeast the work needs into a work product". They also testified: that Ciccone asked for a pay raise and they thought he was entitled to it; that they were fearful that granting it in monetary form would raise the wage demands of other foremen; that they granted the raise through furnishing the use of a car, a method they felt was justified because Ciccone, alone among all the foremen, was on call at all hours of the day and night. Byrne and Neitz insisted that the use of the car was reasonable compensation for the services rendered.

In his report the hearing officer devoted all of his findings to explain why he refused to grant credibility to this testimony of Byrne and Neitz. But discrediting testimony contrary to that necessary to the burden of the proof does not satisfy the burden *(Nishikawa v Dulles,* 356 US 129; *Wallace v Berdell,* 97 NY 13; *Seymour v Oceanic Navigating Co.,* 453 F2d 1185; 65 NY Jur, Witnesses, § 93).

If we go further and examine the hearing officer's detailed reasons for rejecting credibility we find that he relied on personal preference, matters not in evidence and inferences that do not logically flow from the evidence. We cite some examples. The hearing officer stated his own irrelevant predilection when he held that it would have been desirable to have granted Ciccone a pay raise in monetary form. We find no evidence to support the following findings that: "this benefit has been intended to be conferred upon Ciccone regardless of the number of hours he actually worked"; that the "exercise of this discretionary authority [to grant additional monetary compensation] is the only exception to the fixing of wages by the collective bargaining agreements". The hearing officer's finding that "Ciccone's position as an extra-labor foreman is not unique since he is one of a number of foremen employed by Northeast Marine Terminal" is a distortion of

the evidence that, while there were a number of foremen, Ciccone's position was unique in that he was the only extra-labor foreman. We find no support in logic for the hearing officer's conclusion that "providing Ciccone with an automobile can hardly be conceived of as the equivalent of a raise in pay since he has been paid on an hourly basis".

Substantial evidence is that from which "an inference of the existence of the fact found may be drawn reasonably" *(Matter of Stork Rest. v Boland,* 282 NY 256, 273; see, also, *300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176, 181). We find no evidence here from which it can reasonably be inferred that the use of the automobile was not reasonable compensation for services rendered.

In view of this holding we find it unnecessary to pass upon the other points raised by the petitioners.

In this transferred and consolidated article 78 proceeding, the determination of the respondent, dated March 17, 1978, suspending petitioners Ciccone, Neitz and Byrne for 20 days and Northeast Marine Terminal for 10 days or pay a fine of $5,000, should be annulled, on the law, and the petitions granted, without costs or disbursements.

Ross, J. (dissenting). I dissent.

The petitioners, Anthony Ciccone, Russell Neitz, Joseph Byrne and Northeast Marine Terminal Co., Inc. seek judgment pursuant to CPLR article 78, annulling the determination of the respondent Waterfront Commission of New York Harbor (Commission).

The Commission commenced a proceeding, (1) to determine whether petitioners possessed the required good character and integrity within the meaning of the Waterfront Commission Act (the Act), in that Neitz and Byrne, acting on behalf of Northeast, provided Ciccone with "special" remuneration, to wit: a leased automobile; (2) to determine whether Neitz and Byrne had the required good character and integrity within the meaning of the Act, in that the furnishing of the automobile violated section 186 of title 29 of the United States Code (Labor Management Relations Act, § 302, as amd); (3) to determine whether petitioners possessed the required good character and integrity in that they furnished the automobile to Ciccone in violation of sections 722, 723 and 724 of the New York State Labor Law; and, (4) to determine whether Ciccone, in accepting the use of the leased automobile from his em-

ployer, received something of value over and above his compensation as an employee and while an officer in Local 1814, International Lonshoremen's Association. On October 5, 1977, a hearing was held before an Administrative Judge of the Commission. The evidence adduced was stipulated to and agreed upon by the parties.

At all times during these proceedings, Ciccone was a member of the executive board of Local 1814, a labor organization representing employees of Northeast. Byrne was the director and executive vice-president of Northeast, and Neitz was a director and president of Northeast. It was further stipulated that Ciccone accepted the car from his employer, that he kept the car at his home, and had daily use of the vehicle. Petitioners contend that the automobile was made available in lieu of a cash increase in Ciccone's salary. They argue that Ciccone required the car, since unlike other foremen, he was on 24-hour call. However, the record indicates that at no time was he ever summoned to the pier out of his normal working hours.

It is undisputed that the executive board of the union is the highest policy making body for the local and all major decisions emanate therefrom. Ciccone was, therefore, in a position to influence union policy. Both Neitz and Byrne knew that Ciccone held this significant position. Neitz conceded that Ciccone did not require an automobile to perform his duties as an extra-labor foreman. Although other foremen received traditional supplementary compensation, only Ciccone was given the exclusive use of a leased automobile. The Commission found it most difficult to conceive how the personal use of an automobile can be the equivalent of a raise in pay when the petitioner was paid on an "hourly basis". Obviously, this singular benefit was granted regardless of the number of hours Ciccone actually worked.

It is important to note all union wages were established by collective bargaining agreements, except foremen who were covered by discretionary authority within the agreement, permitting an increase in their wages. Accordingly, granting Ciccone a monetary increase in hourly wages because of his purported superior ability (as alleged by the petitioners) would have been proper and in conformity with the then existing labor agreement precluding any suggestion of impropriety.

I am in accord with the Commission's finding that acceptance of the leased automobile suggests that Ciccone is in-

debted to his employer, and would conflict with his obligations as a member of the union's executive board. The majority's position seems to indicate that the Commission is required to accept the agreed upon factual stipulation as infallibly true. An administrative agency may draw reasonable inferences from all the evidence presented. *(Matter of Stork Rest. v Boland,* 282 NY 256, 271.) It is not, however, the function of this court to substitute its judgment for that of the agency. The role of the court is to determine whether there is a rational basis in it for the findings of fact supporting the agency's decision. *(Bowman Transp. v Arkansas-Best Frgt. System,* 419 US 281; see, also, *300 Gramatan Ave., Assoc. v State Div. of Human Rights,* 45 NY2d 176, 182; *Matter of Pell v Board of Educ.,* 34 NY2d 222.) The Commission had ample basis to conclude that sanctions should be imposed on Ciccone under the Labor Management Relations Act (US Code, tit 29, § 186) as the purpose of this section is to prevent employers from tampering with the loyalties of union officials, and disloyal union officials from receiving tribute from employers. *(United States v Ryan,* 225 F2d 417, 426, revd on other grounds 350 US 299; *United States v Roth,* 333 F2d 450.)

Petitioners argue that since no witnesses testified as to the specific fact that the car was not compensation, the Administrative Judge (and the Commission) are factually bound by whatever terminology Neitz and Byrne applied to the vehicle's use. Such conclusion would make a mockery of all principles of logic and completely circumvent the Commission's function to draw a logical and reasonable inference from the data presented. Additionally, Neitz testified that he discussed the automobile as compensation with Byrne and the problem "as far as the Waterfront Commission is concerned". Byrne, a duly licensed attorney, opined that "he didn't think it was illegal" to give Ciccone the use of the car. If the intention, as petitioners maintain, was always to make the car available as extra compensation why was such doubt expressed about the legality or lack thereof in the use of the leased vehicle. A further discrepancy exists when Byrne stated that he was not aware that Ciccone was a union official, and yet Neitz testified that the two had previously discussed this situation. The Administrative Judge, who was required to formulate a conclusion as to the significance of this language, determined the above testimony to be incredible, and I agree. Where the inference is reasonable, based on all of the evidence, substitu-

tion of the court's judgment for that of the agency is unwarranted. I find that the commissioners based their evaluation on all of the credible evidence adduced and thereafter arrived at a comprehensive and reasonable interpretation; the board should be upheld. *(300 Gramatan Ave Assoc. v State Div. of Human Rights, supra; Bowman Transp. v Arkansas-Best Frgt. System, supra.)* It must be borne in mind that if a question or issue is debatable, or if there is room for a difference of opinion, the determination thereof rests with the administrative body and not with the courts. *(Matter of Sullivan County Harness Racing Assn. v Glasser,* 30 NY2d 269.)

The petitioners have raised several other alleged errors which will be dealt with briefly. They argue that the order issued by the Commission was defective since it was issued after one of the commissioners had retired. On March 17, 1978, both commissioners unanimously determined, as required, that the charges had been established by the evidence in the record. The formal written order was thereafter prepared by a subordinate after one of the commissioners had retired. The retiring commissioner was not *functus officio* when the determination was promulgated. Directing an assistant to prepare the formal order was simply delegation of a ministerial duty.* The determination itself was in accord with statutory dictates and not delegated; however, the issuance thereof was a properly delegable function.

Petitioners further contend the Waterfront Commission Act is unconstitutionally vague and without standards. This argument has long been rejected by the United States Supreme Court and the courts of this State. *(Linehan v Waterfront Comm.,* 116 F Supp 683, affd 347 US 439; *Matter of C C Lbr. Co. v Waterfront Comm. of N. Y. Habor,* 31 NY2d 350.)

The union's attorney alleges that the Administrative Judge and counsel for the Commission discussed this case in his presence before the Commission, and accordingly the Administrative Judge was guilty of misconduct. A lengthy hearing was conducted on these allegations before the two Waterfront Commissioners and they determined that "the record does not support a conclusion that Judge Scotti had either pre-judged the matter before rendering his decision or engaged in miscon-

---

* A ministerial act is an act which the law requires a public officer to do in a specified way without regard to his own judgment *(People ex rel. Elmira Advertiser Assn. v Gorman,* 169 App Div 891, app dsmd 222 NY 712; *Matter of Posner v Levitt,* 37 AD2d 331).

duct". In addition, a reading of the content of the conversation in no way justified the allegation of prejudice which the petitioners seek to attach to it.

In this, a transferred and consolidated article 78 proceeding, the determination of the respondent, dated March 17, 1978, suspending the individual petitioners and imposing a fine upon Northeast should be confirmed, with costs.

KUPFERMAN, J. P., and MARKEWICH, J., concur with LYNCH, J.; ROSS, J., dissents in an opinion.

Determination of the respondent, dated March 17, 1978, annulled, on the law, and the petitions granted, without costs and without disbursements.