INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL–CIO, Atlantic Coast District, ILA, AFL–CIO, Local 1233, ILA and Carol Gardner, Plaintiffs-Appellees-Cross-Appellants,

and

Local 1814, International Longshoremen's Association, AFL–CIO, Intervening Plaintiff-Appellee-Cross-Appellant,

v.

The WATERFRONT COMMISSION OF NEW YORK HARBOR and Robert Abrams, Attorney General of the State of New York, Defendants-Appellants-Cross-Appellees,

and

New York Shipping Association, Inc. and Metropolitan Marine Maintenance Contractors Association, Inc., Defendants-Appellees.

Nos. 212, 213, 321, 322 and 323, Dockets 80–7501, 7571, 7581, 7583 and 7591.

United States Court of Appeals, Second Circuit.

Argued Sept. 5, 1980.

Decided Feb. 25, 1981.

Rehearing and Rehearing In Banc Denied June 1, 1981.

Ernest L. Mathews, Jr., New York City (Gleason, Laitman & Mathews, New York City, Thomas W. Gleason and Gary G. Nicolosi, New York City, on brief), for plaintiffs-appellees-cross-appellants, ILA, AFL–CIO, Atlantic Coast Dist., ILA, AFL–CIO and Local 1233, ILA.

Donato Caruso, New York City (Lorenz, Finn, Giardino & Lambos, New York City, C. P. Lambos, New York City, on brief), for defendant-appellee, New York Shipping Ass'n, Inc.

Harkavy, Goldman, Goldman, Caprio & Levy, East Orange, N. J., for plaintiff-appellee-cross-appellant, Carol Gardner.

Schulman, Abarbanel, New York City (Howard Schulman and David Jaffe, New York City, on brief), for intervening plaintiff-appellee-cross-appellant, Local 1814, ILA, AFL–CIO.

Before TIMBERS, VAN GRAAFEILAND and NEWMAN, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

During 1979, seven officials of the International Longshoremen's Association (ILA) were convicted of crimes arising out of malfeasance in office. These are appeals from a summary judgment order of the United States District Court for the Southern District of New York, Sofaer, J., which upheld in substantial part the provisions of New York State's Waterfront Commission Act designed to eliminate persons convicted of certain criminal acts from positions of authority in labor organizations serving the Port of New York.

The challenged provisions, which are contained in section 8 of Article XIV of the Act, as amended, N.Y.Unconsol.Laws § 9933 (McKinney 1974), provide in substance as follows:

(1) No person convicted of a felony, a misdemeanor involving moral turpitude, or certain specified crimes shall serve as an officer of a Port Waterfront Union, unless he has been pardoned or has received a certificate of good conduct from the parole board.

Gerald P. Lally, New York City (Waterfront Com'n of New York Harbor, New York City, David B. Greenfield, Rosemary Orr and Robert A. Pin, New York City, on brief), for defendant-appellant-cross-appellee Waterfront Com'n of New York Harbor.

Amy Juviler, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen., State of N. Y., George D. Zuckerman, Asst. Atty. Gen., New York City, on brief), for intervening-defendant-appellant-cross-appellee, New York State.

(2) No person, including the union, shall knowingly permit such an ineligible person to hold office.

(3) No person shall collect dues within the State for the union if any of its officers, agents, or employees is such an ineligible person.

The district court upheld the first two provisions but invalidated the third. We affirm as to the former, but reverse as to the latter.

The Waterfront Commission Act went into effect on December 1, 1953 following congressional approval of an interstate compact between New York and New Jersey. 67 Stat. 541.[1] Disgruntled waterfront groups launched the first of many attacks against the Act prior to its effective date. *See Linehan v. Waterfront Commission*, 116 F.Supp. 401 (S.D.N.Y.1953); *Linehan v. Waterfront Commission*, 116 F.Supp. 683 (S.D.N.Y.1953), *aff'd*, 347 U.S. 439, 74 S.Ct. 623, 98 L.Ed. 826 (1954); *Staten Island Loaders v. Waterfront Commission*, 117 F.Supp. 308 (S.D.N.Y.1953), *aff'd sub nom. Linehan v. Waterfront Commission*, 347 U.S. 439, 74 S.Ct. 623, 98 L.Ed.2d 826 (1954). In *Linehan v. Waterfront Commission, supra*, 116 F.Supp. 683, a three-judge court upheld the constitutionality of Article VIII ¶¶ 1–3, N.Y.Unconsol.Laws §§ 9827–29, which requires registration of longshoremen and denies registration to those who have been convicted of certain crimes. Judge Augustus N. Hand, writing for the court, found nothing in the Act that violated the Constitution and found no merit in plaintiff's contention that the Act denied equal protection of the law.

In *Staten Island Loaders v. Waterfront Commission, supra*, 117 F.Supp. 308, another three-judge court considered the constitutionality of Article VII, N.Y.Unconsol. Laws §§ 9825–26, which prohibits "public loaders" from operating on the New York piers. The court held the prohibition to be a valid exercise of the State's police power, stating that there was no absolute right to engage in a business which conflicted with the public interest. 117 F.Supp. at 310–11. It also rejected plaintiff's argument that the Act encroached upon the exclusive jurisdiction of Congress over maritime matters. *Id.* at 311. Judge Hand, who once again wrote the opinion, stated that "the registration of longshoremen and stevedores and the prohibition of public loading are matters of local concern in which the need for uniformity throughout the United States does not exist." *Id.*

In *O'Rourke v. Waterfront Commission*, 118 F.Supp. 236 (S.D.N.Y.1954), Judge Weinfeld refused to convene a three-judge court to consider the constitutionality of Article V, N.Y.Unconsol.Laws §§ 9812–18, requiring the licensing of pier superintendents and hiring agents and prohibiting the licensing of those who have been convicted of certain crimes. Judge Weinfeld stated that substantially all of the constitutional infirmities advanced by plaintiffs had already been rejected by the *Linehan* and *Staten Island Loaders* courts. 118 F.Supp. at 237. He found no merit in plaintiffs' suggestion that the court conduct its own inquiry to ascertain whether there was factual support for the legislation.

In *Bradley v. Waterfront Commission*, 130 F.Supp. 303 (S.D.N.Y.1955), then District Judge Kaufman refused to convene a three-judge court to consider the constitutionality of Article IX, N.Y.Unconsol.Laws §§ 9834–38, and Article XII, N.Y.Unconsol. Laws §§ 9852–55. Article XII provides for the establishment of "employment information centers", or hiring halls, for longshoremen, and Article IX requires longshoremen to make regular job applications at one of these centers if they wish their names to remain on the longshoremen's employment register. Plaintiffs contended that these provisions deprived them of due process and equal protection and were inconsistent with the Taft-Hartley and Wagner Labor Relations Acts. Judge Kaufman noted that the

---

1. Descriptions of the corrupt conditions at the Port of New York which led to the interstate compact and the Waterfront Commission Acts may be found in *DeVeau v. Braisted*, 363 U.S. 144, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960), and *Hazelton v. Murray*, 21 N.J. 115, 121 A.2d 1 (1956).

same arguments had been made in *Linehan, supra,* 116 F.Supp. 683, *Staten Island Loaders, supra,* 117 F.Supp. 308, and *O'Rourke, supra,* 118 F.Supp. 236, and "were roundly rejected". 130 F.Supp. at 308. He held that the provision for employment information centers and the concomitant classification requirements for longshoremen seeking work do not conflict with the rights of employees secured by collective bargaining or their rights to pursue the concerted activities granted them by federal labor legislation. 130 F.Supp. at 312.

In *Applegate v. Waterfront Commission,* 184 F.Supp. 33, 35 (S.D.N.Y.1960), Judge Ryan rejected plaintiffs' contention that the Act, and specifically section 8, were superseded or preempted by the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 401–531.

As these challenges to the Act were being rejected by the federal courts, waterfront unions were making the same arguments in the New York and New Jersey courts, with a similar lack of success. *See International Longshoremen's Association v. Hogan,* 3 Misc.2d 893, 156 N.Y.S.2d 512 (1956) (section 8 held constitutional and federal preemption claim rejected); *O'Connor v. Waterfront Commission,* 9 Misc.2d 70, 166 N.Y.S.2d 287 (1957) (required physical examination of port watchmen upheld against challenge of unconstitutionality and infringement upon collective bargaining); *DeVeau v. Braisted,* 11 Misc.2d 661, 166 N.Y.S.2d 751 (1957), *aff'd,* 5 App.Div.2d 603, 174 N.Y.S.2d 596 (1958), *aff'd,* 5 N.Y.2d 236, 183 N.Y.S.2d 793, 157 N.E.2d 165 (1959), *aff'd,* 363 U.S. 144, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960) (section 8's dues collection proscription upheld); *In re Local 824, International Longshoremen's Association v. Waterfront Commission,* 16 Misc.2d 632, 182 N.Y.S.2d 481 (1958) (section 8 held not to interfere with collective bargaining rights of waterfront employees). *See also Hazelton v.*

*Murray, supra,* 21 N.J. 115, 121 A.2d 1 (dues collection proscription of section 8 of New Jersey's Waterfront Commission Act upheld in opinion by Justice Brennan, then a member of the Supreme Court of New Jersey).

■ Despite the uniform tenor of the above holdings, and despite the Supreme Court's opinion in *DeVeau v. Braisted,* which must be accepted as controlling authority, the district court held the dues-collection proscription of section 8 to be "bizarre" and an unconstitutional deprivation of the First Amendment right of association of waterfront employees. Our reading of *DeVeau* leads us to a different conclusion.

The incidents giving rise to the *DeVeau* litigation originated with a subpoena from the office of the defendant Braisted, then district attorney of Richmond County, which was served upon William V. Bradley, ILA president. At a subsequent interview which took place at Braisted's office, Bradley was informed that DeVeau had been convicted of a felony and that, so long as DeVeau was an officer of ILA Local 1346, any person who collected dues on behalf of that local could be convicted of a misdemeanor.[2] As a result of this warning, DeVeau was suspended from his office as secretary-treasurer of Local 1346.

DeVeau and two other union members then sued for a judgment declaring the dues-collection proscription of section 8 to be invalid and for an injunction restraining the defendant from prosecuting or threatening to prosecute plaintiffs or any other person collecting dues on behalf of Local 1346. Plaintiffs alleged that the dues provisions conflicted with section 7 of the National Labor Relations Act, 29 U.S.C. § 157, interfered with collective bargaining, and denied employees the right to organize and to bargain collectively through representatives of their own choosing. They asked the court to prohibit the defendant from

---

**2.** Section 29 of New York's penal law, as it then existed, provided that "[w]here the performance of any act is prohibited by a statute, and no penalty for the violation of such statute is imposed in any statute, the doing of such act is a misdemeanor." This statute, since repealed, was later held inapplicable to section 8

of the Waterfront Commission Act. *See People v. Colozzo,* 283 N.Y.S.2d 409, 54 Misc.2d 687 (1967), *aff'd,* 303 N.Y.S.2d 348, 32 App.Div.2d 927 (1969). However, it was the threat of prosecution under this then unchallenged statute that gave rise to the *DeVeau* action.

interfering with their exercise of those rights. The trial court denied plaintiffs' motion and granted defendants' motion to dismiss the complaint, holding that plaintiffs' "no longer novel" constitutional arguments were without merit, and that there was no conflict between section 8 of the Waterfront Commission Act and section 7 of the National Labor Relations Act. Affirmance by the Appellate Division, Court of Appeals, and United States Supreme Court followed.

DeVeau argued in the Supreme Court that section 8 was at odds with the declaration of congressional policy contained in section 1 of the National Labor Relations Act, 29 U.S.C. § 151, which supported the "exercise by workers of full freedom of association, self-organization and designation of representatives of their own choosing . . . ." 363 U.S. at 151–52, 80 S.Ct. at 1150. The Court, although fully aware that Braisted had "threatened to prosecute anyone collecting dues for the Local while appellant remained its officer", *id.* at 146, 80 S.Ct. at 1147, held, nonetheless, that the federal and state statutes could function together and that section 8 did not deprive waterfront employees of the opportunity to choose bargaining representatives. *Id.* at 152, 80 S.Ct. at 1150. The Court also held that the restrictions on freedom of choice arising out of section 8's disqualification of ex-felons were not incompatible with the somewhat different restrictions contained in section 504(a) of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 504(a). 363 U.S. at 155–57, 80 S.Ct. at 1152–53.

In *Bell v. Waterfront Commission*, 279 F.2d 853, 858 (2d Cir. 1960), this Court, citing *DeVeau*, upheld the refusal of the district court to convene a three-judge court to consider the plaintiff's constitutional attack on section 8. We also held that as a result of the *DeVeau* decision plaintiff's claims of pre-emption had "collapsed." *Id.* at 859.

The statute, as upheld in *DeVeau* and *Bell*, contained no provision for criminal prosecution; it simply prohibited the collection of dues. The present statute prescribes criminal sanctions against both the

dues collector and the convicted office holder for violation of the statute's provisions. The added penal provisions do not lessen the relevance of *DeVeau* in the instant case.

The plaintiffs in *DeVeau* challenged both the validity of the dues-collection proscription and the prosecution that was threatened for its violation. In their complaint, they demanded, among other things, that the defendant be enjoined from "interfering with or affecting in any manner the rights of [Local 1346 members] to select agents and representatives of their own choosing for the purpose of negotiating terms of employment, settlement of grievances and working conditions in general for the members of Local 1346." In affirming dismissal of the complaint, the Court necessarily upheld, against a claim of preemption, the validity of the dues-collection prohibition.

■ The First Amendment challenge, which was not considered in *DeVeau*, raises issues distinct from the preemption claim, although the "full freedom of association" afforded waterfront employees by section 1 of the National Labor Relations Act, 29 U.S.C. § 151 (1976), is similar to the freedom of association protected by the First Amendment. The First Amendment's protection of the right of association extends to labor union activities. *United Mine Workers of America v. Illinois State Bar Association*, 389 U.S. 217, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967); *Connecticut State Federation of Teachers v. Board of Education Members*, 538 F.2d 471, 478 (2d Cir. 1976). However, the right to associate is not absolute. *Jones v. North Carolina Prisoners' Labor Union Inc.*, 433 U.S. 119, 125–33, 97 S.Ct. 2532, 2537–41, 53 L.Ed.2d 629 (1977); *United States Civil Service Commission v. National Association of Letter Carriers, AFL–CIO*, 413 U.S. 548, 567, 93 S.Ct. 2880, 2891, 37 L.Ed.2d 796 (1973); *Jensen v. Farrell Lines, Inc.*, 625 F.2d 379, 387–90 (2d Cir. 1980).

The district court suggested that the dues-collection prohibition impairs First Amendment rights because the "less drastic" measures of prosecuting the union or its officers are available. The district

court's assumption that the availability of these "less drastic" measures would make it unnecessary in most cases to resort to the dues-collection prohibition, does not, however, make the prohibition unconstitutional. Although the alternative measures constitute more direct methods of achieving New York's goal of banning persons convicted of certain crimes from office and waterfront unions, it does not follow that the indirect method, the dues-collection provision, is either unnecessary or too drastic, given the possibility of recalcitrant union officials. If such officials, intent on retaining convicted men in office, had the support of a determined union membership, the threatened use of the dues-collection prohibition might be a more prompt and effective remedy than criminal prosecution of the union or its officers. Conceivably, the prohibition might be enforced either (a) against innocent members of the union who would want to remove the convicted officer but do not have access to the organizational means to do so, or (b) before the union or an individual officer knows or is notified by the Commission that section 8 is being violated. We defer consideration of these possibilities—which we think exceedingly unlikely—until such arguably unconstitutional applications of the statute are presented.

■ Plaintiffs' remaining arguments were rejected by the district court for reasons with which we are in substantial accord. The district court correctly predicted that, when the New York courts were asked to determine when a "conviction" occurs under the statute, they would hold that it occurs when there is a guilty plea or verdict, not, as plaintiffs urge, when all appeals are exhausted. *See Scotto v. Waterfront Commission,* No. 5580/80 (Sup.Ct. Sept. 19, 1980), *aff'd,* 78 A.D.2d 686, 434 N.Y.S.2d 1004 (App.Div. 2d Dep't. 1980), *leave to appeal denied,* 51 N.Y.2d 709, 434 N.Y.S.2d ——, 415 N.E.2d 984 (1980). The district court did not err in adopting the definition it believed that New York courts would apply. The definitions of "conviction" under New York law and section 504(c) of the Labor-Management Reporting and Disclosure Act are not so incompatible as to require a finding of federal preemp-

tion. *See DeVeau v. Braisted, supra,* 363 U.S. at 154–57, 80 S.Ct. at 1151–53; *Cloverleaf Butter Co. v. Patterson,* 315 U.S. 148, 156, 62 S.Ct. 491, 495, 86 L.Ed. 754 (1942); *Fitzgerald v. Catherwood,* 388 F.2d 400, 402–06 (2d Cir.), *cert. denied,* 391 U.S. 934, 88 S.Ct. 1846, 20 L.Ed.2d 854 (1968).

■ We agree with the district court's conclusion that, when plaintiff Gardner, President of ILA Local 1233, received four loans arranged by an employer of union members, in violation of section 302(b)(1) of the Labor-Management Relations Act of 1947 as amended, 29 U.S.C. § 186(b)(1), he was guilty of an offense involving moral turpitude. When the Senate Committee on Labor and Public Welfare reported on the proposed 1959 amendments to section 302, it quoted with approval a provision in the ethical practices code of the AFL and CIO:

> "It is too plain for extended discussion that a basic ethical principle in the conduct of union affairs is that no responsible trade union official should have a personal financial interest which conflicts with the full performance of his fiduciary duties as a workers' representative."

S.Rep. 187, 86th Cong., 1st Sess. (1959), *reprinted in* [1959] U.S.Code Cong. & Ad. News 2318, 2330–31.

The Committee then stated that when union officials ignore this basic standard of conduct, "[n]o one would deny that the conduct is wrong." *Id.* at 2331. In enacting and amending section 302, Congress was not stigmatizing conduct that theretofore had been without blemish. Instead, it was taking statutory cognizance of conduct that was similar in some ways to the crime of bribery, *see United States v. Annunziato,* 293 F.2d 373, 379–80 (2d Cir.), *cert. denied,* 368 U.S. 919, 82 S.Ct. 240, 7 L.Ed.2d 134 (1961); *Hodgson v. Chain Service Restaurant, Luncheonette & Soda Fountain Employees Union,* 355 F.Supp. 180, 184–86 (S.D.N.Y.1973), and was already regarded as morally wrong. Bribery of a participant in amateur sport is a crime involving moral turpitude. *United States ex rel. Sollazzo v. Esperdy,* 285 F.2d 341, 342 (2d Cir.), *cert. denied,* 366 U.S. 905, 81 S.Ct. 1049, 6 L.Ed.2d 204 (1961). Corruption of union

participants in the collective bargaining process can be no less immoral.

■ Like the district court, we find no merit in plaintiffs' argument that section 8 of the Waterfront Commission Act will be given impermissible extraterritorial effect if its ban on waterfront activities is held to include those of non-resident union officials. Section 8 does not apply to "a federation or congress of labor organizations organized on a national or international basis even though one of its constituent labor organizations may represent persons . . . registered or licensed [under the Act]." N.Y. Unconsol.Laws § 9933. ILA, an international union comprised of local unions, does not come within this exception. *International Longshoremen's Association v. Hogan, supra,* 3 Misc.2d at 896–97, 156 N.Y. S.2d 512. However, both New York State and the Waterfront Commission construe section 8 as applying only to those ILA officers who can exert influence over labor relations on the New York waterfront. In preventing convicted persons from occupying such positions of authority, New York is vindicating a "legitimate and compelling state interest, namely, the interest in combating local crime infesting a particular industry." *DeVeau v. Braisted, supra,* 363 U.S. at 155, 80 S.Ct. at 1152.

The district court found that all four of the ILA officials whose Florida convictions are at issue herein "serve in important ILA offices, having substantial power to affect labor relations on the New York waterfront." The union does not dispute this finding. The Act does not prohibit the election of these men to offices in Florida locals nor does it prohibit the collection of dues outside New York State from Florida longshoremen. It simply prevents corrupt union officials from contributing to a longstanding problem of criminal wrong-doing on the New York waterfront.

Plaintiffs' remaining preemption and due process arguments have been rejected so many times that they merit no further comment. *See, e. g., DeVeau v. Braisted, supra,* 363 U.S. at 157–60, 80 S.Ct. at 1153–54; *Bradley v. Waterfront Commission,* 12 N.Y.2d 276, 239 N.Y.S.2d 97, 189 N.Ed.2d 601 (1963). The roll call of recent convictions of waterfront union officials, *see, e. g., United States v. Scotto and Anastasio,* 641 F.2d 47 (2d Cir. 1980), is adequate rebuttal to plaintiffs' contention that improved conditions on the New York waterfront eliminated the continued need for the Waterfront Commission Act.

The judgment appealed from is affirmed, except as to that portion prohibiting the enforcement of the dues-collection prohibition of section 8 of the Waterfront Commission Act, which portion is hereby reversed with directions to enter summary judgment on this issue in favor of the defendants.